ATLAS FINANCE CORPORATION *vs.* FRED V. TROCCHI & another.

Plymouth.    December 7, 1938. — March 2, 1939.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Surety.   Bills and Notes,* Indorser.   *Estoppel.   Subrogation.*

The payee of a corporation's note, who gave incorrect directions as to the authorization of its mortgage securing the note, was estopped as against an indorser of the note to assert that the mortgage was invalid for want of proper authorization.

An indorser of a note secured by a mortgage of property of ample value was relieved of liability to the payee when, in bankruptcy proceedings of the maker, the payee without the indorser's consent relinquished the mortgage for a fraction of the amount due on the note.

CONTRACT.    Writ in the District Court of Brockton dated April 23, 1936.

The action was heard by *Rowe*, J.

*H. Freed*, (*A. P. Rudnick* with him,) for the plaintiff.

*R. G. Clark, Jr.*, for the defendants, submitted a brief.

DOLAN, J.   In this action of contract the plaintiff seeks to recover from the defendants, husband and wife, a balance alleged to be due from them as indorsers of a note of which Lincoln Bakery, Inc., was the maker, and which was secured by a chattel mortgage of all the assets of that corporation. The action was brought in the District Court of Brockton, where the judge found for the defendants.   It now comes before us on an appeal from an order of the Appellate Division dismissing the report.

The plaintiff is the payee and holder of the note, which was for $1,200 and which was executed on August 21, 1935, by the Lincoln Bakery, Inc., hereinafter referred to as the corporation.   All the capital stock of the corporation was owned by the defendants and they constituted the board of directors.   A general baking business was conducted by the corporation at Bridgewater in this Commonwealth.   The defendants were not "very familiar" with business practices.   One Lipkin, who was an agent of the plaintiff, but who was not a lawyer, represented the plaintiff in the negotiations leading up to the execution of the note and mortgage.   He told the defendants that it would be necessary to execute a mortgage of the corporate assets, and dictated a form of vote of authorization of the mortgage to be passed by them as directors of the corporation.   The defendants, although owners of all the stock, voted as directors to authorize the defendant Fred V. Trocchi to borrow the money and to execute the note and mortgage. The defendants were also advised by Lipkin that "their indorsement" would be required on the note as additional security for the loan.   The vote was passed in the form dictated by Lipkin.   The defendant Fannie M. Trocchi hesitated before signing the note as an indorser, saying: "Why should I sign it.   Mr. Trocchi is the owner.   He has all the machinery, etc."   Lipkin replied: "It is not really anything.   It is just to cover the company that loans the money to stand back of it."   She "still hesitated," and Lipkin said: "It really isn't anything.   You have the

mortgage." She then said: "Well, there is enough machinery to cover the mortgage taken out, because we bought trucks not so long ago." Lipkin said: "Well, this is just to cover the company" and she said: "As long as it doesn't reflect on me." Thereupon the defendants indorsed the note. The fair value of the assets covered by the mortgage could have been found to be $8,000 to $10,000, while the note and mortgage were for $1,200. The note and mortgage were dated August 21, 1935.

On January 6, 1936, the corporation was adjudicated bankrupt and the property covered by the mortgage came into the possession of the receiver. Thereafter, the plaintiff filed a petition before the referee in bankruptcy to establish the validity of its mortgage. The referee held the mortgage invalid as having been one of all the assets of the corporation and as having been authorized by the directors and not by the stockholders as, he held, was required under G. L. (Ter. Ed.) c. 156, § 42. The plaintiff "appealed the decision" to the District Court of the United States, which confirmed the findings, rulings and orders of the referee. The plaintiff thereupon entered an appeal from the decision of the judge of the District Court to the Circuit Court of Appeals. While that appeal was pending, the plaintiff agreed with the trustee in bankruptcy to compromise by accepting as on a "priority claim" the sum of $125, and by proving as an unsecured creditor the balance of $1,075. The trustee in bankruptcy filed with the referee in bankruptcy a petition to be allowed to compromise the plaintiff's claim on that basis and the petition was allowed. The defendants were not parties to this agreement and did not know of the allowance of the petition. The plaintiff received by priority $125 and, as an unsecured creditor, $182.75, a total of $307.75.

The judge found that all the parties "are honest"; that it was intended by all that the mortgage should be a valid one; that it was only the error of the plaintiff's representative, in having the vote drawn up as a vote of directors rather than of stockholders, that gave rise to any question of the validity of the mortgage; and that the mortgaged

property was the primary fund which the parties on the note were entitled to have applied on the mortgage debt. He ruled that, if the defendants had paid the mortgage (had it been properly executed), they would have been subrogated to the plaintiff's rights. He further found that it was the plaintiff's directions which led the defendants to do that under which there could be no subrogation, assuming the mortgage to have been thus rendered invalid, and also found or ruled that the plaintiff had by the conduct of its agent created an estoppel against itself.

While the plaintiff contends that the judge erred in refusing to grant certain requested rulings, it has not addressed its argument to them specifically, but has contended generally that the plaintiff's conduct with respect to the collateral security was not such as would discharge the defendants from liability on the note. We think this contention is pertinent to the question whether the judge erred in denying the plaintiff's motion for a finding in its favor as a matter of law, on the ground that the liability of the defendants to it is fixed by the note in the case, and on the further ground that the defence set up by the defendants is not open to them "because the issues they set up are res judicata, by the decision of the United States District Court for the District of Massachusetts," and to requested rulings to the same effect which were denied.

The defendants, as indorsers of the note, stand in the position of sureties. They were entitled to have the mortgaged property regarded as the primary fund for the satisfaction of the debt to secure which it was given. *North End Savings Bank* v. *Snow*, 197 Mass. 339. *Conway Savings Bank* v. *Vinick*, 287 Mass. 448, 451. As ruled by the judge, if the mortgage had been a valid one, as was intended by all of the parties, the defendants would have been entitled to have its proceeds applied to the satisfaction of the debt, and if the plaintiff had chosen to proceed against them on the note, upon satisfaction of the debt (see *Miller* v. *Levitt*, 226 Mass. 330, 331, and cases cited; *Silverstein* v. *Saster*, 285 Mass. 453, 458; Sheldon, Subrogation [2d ed.], § 115), they would have been subrogated to the rights of the plain-

tiff under the mortgage. *Fitcher* v. *Griffiths*, 216 Mass. 174, 176. *Ricker* v. *Ricker*, 248 Mass. 549, 551. *Hill* v. *Wiley*, 295 Mass. 396, 403. Sheldon, Subrogation (2d ed.), § 123. Am. Law Inst. Restatement: Restitution, § 162 (e). In either event the defendants would have had the benefit of the security.

It is unnecessary to the determination of the issue before us to decide whether as matter of law the mortgage in question was valid or invalid. The referee and the judge of the United States District Court, in holding the mortgage invalid, probably reached that conclusion in reliance upon the cases of *Commerce Trust Co.* v. *Chandler*, 284 Fed. 737, and *McDonald* v. *First National Bank of Attleboro*, 70 Fed. (2d) 69, in each of which it was held that the mortgage involved was of all the assets of a Massachusetts corporation, that it was tantamount to a sale of all its assets within G. L. (Ter. Ed.) c. 156, § 42, and that, having been authorized by the directors of the corporation instead of by a vote of the stockholders as provided in that section, the mortgage was invalid. If the mortgage in the present case was invalid and it was open to the trustee in bankruptcy so to assert, it was so through the fault of the plaintiff, whose agent dictated the form of the vote to the defendants and secured its adoption by them, as directors, in the manner before recited. The judge properly ruled that the plaintiff was estopped by its conduct from asserting that the mortgage was invalid. Moreover, in the recent case of *Greene* v. *Reconstruction Finance Corp.* 100 Fed. (2d) 34, 36, cited by the plaintiff, the same Federal Circuit Court of Appeals, which decided the *Commerce Trust Co.* and the *McDonald* cases just referred to, states that, in deciding those cases, it overlooked the case of *Royal Indemnity Co.* v. *American Bond & Mortgage Co.* 289 U. S. 165, and that it is "forced to the conclusion that . . . [its] holdings [in those cases] were erroneous." In the *Greene* case it was held that a provision of the Revised Laws of Delaware requiring an affirmative vote of a majority of stock issued and outstanding, or the written consent of the holders of a majority of the voting stock, to authorize the sale, lease,

or exchange of all the assets of a corporation, did not enable the trustee in bankruptcy representing the corporation and its creditors to question the validity of a mortgage of all its assets authorized only by a vote of its directors. One reason assigned for this holding, and stated to be persuasive, is that such statutes "as the one relied on are intended for the protection of stockholders and have nothing to do with the interests and rights of creditors," and that "creditors have no standing to plead statutory requirements not intended for their protection."

The question of the validity of the mortgage involved in the case at bar was pending in the same Circuit Court of Appeals that later decided the *Greene* case. If that case be accepted as stating the true law governing such questions in bankruptcy proceedings, it but emphasizes that the conduct of the plaintiff, in compromising the question of the validity of the mortgage before awaiting final judicial determination thereof and without the consent or knowledge of the defendants, was prejudicial to the latters' interest, and operated to release them from all liability on the note, since its amount was far exceeded by the value of the mortgaged property. A creditor who has his debt secured by sureties and also has property pledged to him by the principal debtor as security for the debt is bound to keep the security for the benefit of the surety as well as of himself. If he relinquishes the property, as in the case at bar, without the consent of the sureties, he loses his claim against them to the amount of the property given up. *Baker* v. *Briggs*, 8 Pick. 122. *Carpenter* v. *King*, 9 Met. 511. *Guild* v. *Butler*, 127 Mass. 386. *Boston Penny Savings Bank* v. *Bradford*, 181 Mass. 199, 200–201. *Durfee* v. *Kelly*, 228 Mass. 571, 573. Sheldon, Subrogation (2d ed.), § 119.

*Order dismissing report affirmed.*