CECIL S. ROSE *vs.* ANTON E. HOMSEY & another.

Suffolk.   January 8, 1964. — April 6, 1964.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Bills and Notes,* Accommodation.  *Surety.*

Under § 52 of the Negotiable Instruments Law, G. L. c. 107, a wife who
signed as a maker a promissory note signed by her husband as maker
in order to aid him in his business and who personally received no con-
sideration for the note was an accommodation maker.   [261]

Irrespective of whether an accommodation maker's liability on a promis-
sory note under the Negotiable Instruments Law, G. L. c. 107, was pri-
mary or secondary, such liability was not affected where the payee failed
properly to record a mortgage of the accommodated maker's real estate
delivered to the payee as collateral for the note and consequently lost
the security of the mortgage upon bankruptcy of the mortgagor.   [262–
263]

BILL IN EQUITY filed in the Superior Court on September
16, 1960.

The suit was heard by *Gourdin,* J., on a master's report.
The defendant Lillian G. Homsey appealed from the final
decree.

*Robert S. Marsh* for the defendant Lillian G. Homsey.
*Jerome P. Facher* for the plaintiff.

KIRK, J.   This is a bill in equity by the payee on a $25,000
promissory note against the accommodation maker, Lillian
G. Homsey (Lillian), wife of the maker, Anton E. Homsey
(Anton), to reach and apply her dower interest in certain
real estate, formerly owned by Anton, but subsequently
taken by the trustee in bankruptcy of Anton's estate.[1]   The

---

[1] The bill of complaint, filed about two months before Anton was adjudicated
a bankrupt, named him as a defendant also and sought to have established
against him indebtedness for failure to pay the note referred to above, another
note with an outstanding principal balance of $18,800, and several checks
aggregating $71,241.84.   The bill further sought to reach and apply certain
securities pledged as collateral by Anton and Lillian to secure loans obtained
by them from Hub Investment Company, Inc., Raldne Realty Corporation, and
Harvard Trust Company.   The court dismissed the bill as to these companies.
It further decreed that Anton was indebted to the plaintiff in the sum of
$115,041.84 (which includes the amount owed on the note here involved) plus
interest, and ordered him to pay the plaintiff $136,718.84.   Anton did not
appeal.

cause was heard by a master whose report was confirmed by an interlocutory decree from which no appeal was taken.

The master made the following findings of fact. On various occasions from 1953 on, the plaintiff, a garment manufacturer, lent Anton, a stockbroker, substantial sums of money. The note in issue was executed on April 2, 1956, by Anton as maker and Lillian as accommodation maker. Lillian received no consideration for her signature, but merely signed the instrument to aid her husband in his business. She also signed, as collateral for the loan, a mortgage of realty in Falmouth owned by her husband. It is Lillian's dower interest in this property, as well as in certain other real estate, which the plaintiff is seeking to reach and apply. Anton delivered to the plaintiff the note and the mortgage and requested that the plaintiff not record the mortgage. The plaintiff acquiesced and, without Lillian's knowledge, did not record the mortgage. However, upon learning that Anton was in financial difficulty, the plaintiff attempted to record the mortgage on September 7, 1960, but the recording was defective. On December 2, 1960, Anton was adjudicated a bankrupt.

The court entered a final decree adjudging Lillian to be indebted to the plaintiff in the amount of $25,000 plus interest, and ordering her to pay him $34,200. The court further ordered that her interest in Anton's real estate be reached and applied in satisfaction of her debt, that the trustee in bankruptcy pay to the plaintiff all sums held by him belonging to Lillian, and that Lillian, her agents and attorneys pay to the plaintiff all sums held in escrow pending determination of this suit.

We are bound by the facts found in the confirmed report of the master except those which are mutually inconsistent or plainly wrong. *Lukas* v. *Leventhal,* 344 Mass. 762. No such error appears here. We proceed to determine whether the final decree is "such as the law requires upon the facts found by the master and proper inferences therefrom." *Foot* v. *Bauman,* 333 Mass. 214, 219, and cases cited. *New England Overall Co. Inc.* v. *Woltmann,* 343 Mass. 69, 75.

Rose *v.* Homsey.

Since the transaction under consideration occurred before October 1, 1958, the effective date of the Uniform Commercial Code (G. L. c. 106), we apply the law as it existed at the time the note was executed, i.e., G. L. c. 107, Negotiable Instruments Law (N.I.L.). Under the provisions of the N.I.L., as the master properly found, Lillian was an accommodation maker since she signed the note as a maker, without personally receiving any consideration for it, to aid her husband in his business.[2] Lillian argues that as an accommodation maker she is liable to the plaintiff as a surety and that, as a surety, she has been discharged by the plaintiff's failure properly to record the mortgage, with the result that the plaintiff lost his security upon Anton's being adjudged a bankrupt.

It is well established that when a payee on a note, without the consent of the surety, impairs the collateral given to him as security by the maker, the surety is discharged to the extent that the security is impaired. *Durfee* v. *Kelly,* 228 Mass. 571, 573. *Atlas Fin. Corp.* v. *Trocchi,* 302 Mass. 477, 482. This rule has been applied in a situation where a payee has impaired the collateral by failing to record a mortgage given to secure the debt. *Providence, Fall River & Newport Steamboat Co.* v. *Massachusetts Bay S.S. Corp.* 38 F. 2d 674, 676 (D. Mass.).

Prior to the enactment of the N.I.L. an accommodation maker was held to be a surety. *Guild* v. *Butler,* 127 Mass. 386, 389. *Union Trust Co.* v. *McGinty,* 212 Mass. 205, 206. Even after the passage of the N.I.L. an accommodation maker was held to be a "surety," but only to the extent of preserving in the accommodation maker who pays a note the right of subrogation against the maker. *Ricker* v.

---

[2] "An accommodation party is one who has signed the instrument as maker, drawer, acceptor or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder in due course, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." G. L. c. 107, § 52. Cf. G. L. c. 106, § 3-415 (1), presently in effect, where an accommodation party is defined as "one who signs the instrument in any capacity for the purpose of lending his name to another party to it." That section further provides that when "the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation." G. L. c. 106, § 3-415 (2).

*Ricker,* 248 Mass. 549, 551–552. "[I]t is apparent [from the N.I.L.] that no relation of principal and surety is established or contemplated by any of its sections. It determines the liability of the various parties to the negotiable instrument on the basis of that which is written on the paper. The obligation *of all makers, whether for accommodation or otherwise,* is to pay to the holder for value according to the terms of the bill or note. Their obligation is primary and absolute" (emphasis supplied). *Union Trust Co.* v. *McGinty,* 212 Mass. 205, 207. *Stoughton Trust Co.* v. *Pike,* 282 Mass. 39, 41. This court held in the *Union Trust Co.* case that an accommodation maker could not raise the suretyship defence that an extension of time granted by the payee without the consent of the surety discharges the surety. In exercising that "[c]are [which] should be taken to adhere as closely as possible to the obvious meaning of the act, without resort to that which had theretofore been the law of this Commonwealth, unless necessary to dissolve obscurity or doubt" (*Union Trust Co.* v. *McGinty,* 212 Mass. 205, 207), we have examined § 142, which lists five acts that will discharge a negotiable instrument,[3] and have found no provision which discharges the instrument because of the payee's impairment of collateral. Section 142 relates only to persons, like Lillian, whose liability is primary. But even if the liability of Lillian were secondary, she would still not be discharged since § 143, which enumerates six acts that will release persons secondarily liable, contains no provision for discharge because of impairment of collateral.[4]

---

[3] "A negotiable instrument is discharged: 1. By payment in due course by or on behalf of the principal debtor; 2. By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation; 3. By the intentional cancellation thereof by the holder; 4. By any other act which will discharge a simple contract for the payment of money; 5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

[4] "A person secondarily liable on the instrument is discharged: 1. By any act which discharges the instrument; 2. By the intentional cancellation of his signature by the holder; 3. By the discharge of a prior party; 4. By a valid tender of payment made by a prior party; 5. By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved; 6. By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

Rose *v.* Homsey.

It follows that the suretyship defence which Lillian advances is not available to her as an accommodation maker.

We recognize the confusion that exists with regard to an accommodation maker under the N.I.L. The drafters of the Uniform Commercial Code also were aware of this confusion and have endeavored to make it clear that "an accommodation party is *always* a surety"[5] (emphasis supplied) and that the "suretyship defenses . . . are not limited to parties who are 'secondarily liable,' but are available to any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, *including an accommodation maker* or acceptor known to the holder to be so"[6] (emphasis supplied). Notwithstanding this statutory clarification of the law we are bound to apply the law as it existed at the time of the transaction.

*Decree affirmed with costs.*

[5] G. L. c. 106, § 3–415, official comment 1.

[6] G. L. c. 106, § 3–606, official comment 1. Note that under § 3–606 (1) the "holder discharges any party to the instrument to the extent that without such party's consent the holder . . . (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." In connection with this subsection, see § 9–207 (1).