THE FIRST NATIONAL BANK OF MARLTON, A BANKING INSTITUTION DULY ORGANIZED UNDER THE LAWS OF THE UNITED STATES, PLAINTIFF, v. G. R. WOOD, INC., A CORPORATION OF THE STATE OF NEW JERSEY; JAMES KNIGHT; MICHAEL N. KOUVATAS; JOSEPH FORTE, JR.; JOSEPH MATTHEWS; AND DOUGLAS HASBROUCK, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided December 6, 1965.

*Messrs. Powell & Davis (Mr. James M. Davis, Jr.,* appearing), attorneys for plaintiff.

*Mr. Michael N. Kouvatas (Mr. Louis B. LeDuc,* appearing), attorney for defendants Michael N. Kouvatas and James Knight.

*Messrs. Starr, Summerill & Davis (Mr. William C. Davis,* appearing), for defendant Joseph Matthews.

*Mr. Joseph Wm. Cowgill,* attorney for defendant Joseph Forte, Jr.

WOOD, A. C., J. C. C. This is an action on a promissory note. On May 10, 1960, the defendant, G. R. Wood, Inc., then the operator of a scheduled bus line and of charter buses, made and executed to the plaintiff bank a note for $4000. The note was given for a loan to finance the purchase of a bus by G. R. Wood, Inc. As collateral security for the loan, G. R. Wood, Inc. gave to plaintiff a chattel mortgage on the bus, bearing even date with the note, which was recorded in

the office of the County Clerk of Gloucester County. The note was indorsed in blank before delivery by the individual defendants Knight, Kouvatas, Forte, Matthews and Hasbrouck.

Periodic payments of interest were made on the note to and including June 30, 1962. On that day, an order was entered in the Superior Court, Chancery Division, adjudicating G. R. Wood, Inc. insolvent and appointing Harris Y. Cotton, Esq., a member of the bar of this State, as custodial receiver of the company. By the same order, the creditors of the company were enjoined and restrained from proceeding with legal actions against it.

Following the appointment of the receiver, a petition for reclamation of the mortgaged bus was prepared and filed on behalf of the plaintiff but was never prosecuted to completion and no order granting or denying reclamation was ever entered. The receiver testified in the trial of this action that, with respect to certain other buses, the holders of encumbrances filed petitions for reclamation which the receiver resisted. In those cases orders were entered permitting the receiver to reclaim and operate the buses, paying to the petitioners rental therefor at the rate of $100 per month for each such bus.

The receiver operated the company until November 1964. On January 8, 1965 the bus which was pledged as collateral by the said chattel mortgage was sold, by leave of the court, for the sum of $1550. By agreement with the plaintiff, the receiver retained $200 as compensation for his administrative expenses in effecting the sale and remitted the balance of $1350 to plaintiff, which has been credited by plaintiff on account of the amount due on the note.

Demand was made by plaintiff for payment of its note on May 31, 1963. In due course the note was presented for payment but was not paid. This action was instituted on August 5, 1963. By reason of the injunction above mentioned the action has not proceeded against G. R. Wood, Inc. Douglas Hasbrouck was not served with process and is not presently a party to this action. The plaintiff seeks judgment for the

balance due on the note against the remaining individual defendants.

These defendants assert that they are relieved of liability on the note by reason of the failure of the plaintiff to seize and sell the bus held as collateral and apply the proceeds of such sale in satisfaction of or on account of the balance due on the note. In the alternative they assert that they should be credited with the amount which might have been realized from such sale.

This transaction having taken place before the effective date of the Uniform Commercial Code in this State (*N. J. S. Title* 12A) the case is governed by the provisions of the Uniform Negotiable Instruments Law, *R. S.* 7:1–1 *et seq.* Under that law, the defendants here occupy the status of accommodation indorsers.

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person; such person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." *R. S.* 7:2–29.

█ The words "without receiving value therefor" have been held to refer to the instrument, so that under this section an accommodation party is one who has signed his name thereto without receiving value for the instrument. *Carr v. Wainwright,* 43 *F.* 2d 507 (3 *Cir.* 1920). Here the recipient of the loan was G. R. Wood, Inc., an operating bus company. G. R. Wood, Inc. was the purchaser and owner of the bus mortgaged as collateral and the loan was to finance the purchase of said bus. The defendants, while stockholders of G. R. Wood, Inc., are not shown to have received any individual benefit or value for the note. The mere fact that the loan would not have been granted without their indorsements on the note does not alter that fact, or affect the conclusion that they signed for the purpose of lending their names to G. R. Wood, Inc. They therefore have the rights and liabilities of secondary parties. *R. S.* 7:2–29, 7:2–66.

It remains to inquire whether the conduct of the plaintiff with respect to the collateral relieved the defendants of liability on the note in whole or in part. I conclude that it did not.

*R. S.* 7:2–120 enumerates the acts or means by which a person secondarily liable on a note is discharged. These are:

"I.  By any act which discharges the instrument;

II.  By the intentional cancellation of his signature by the holder;

III.  By the discharge of a prior party;

IV.  By a valid tender of payment made by a prior party;

V.  By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved;

VI.  By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

Clearly the defendants are not discharged under any of the foregoing provisions. The plaintiff has not discharged the instrument or cancelled the signature of any of the defendants; no tender of payment has been made; G. R. Wood, Inc. has not been released; and the time for payment of the note has not been extended.

But, say the defendants, the plaintiff "impaired its security" and this operated as a discharge. The court cannot agree. The court has not found, nor has the diligent and thorough research of counsel resulted in its being referred to any New Jersey case directly dealing with this question. However, in the case of *Rose v. Homsey*, 347 *Mass.* 259, 197 *N. E.* 2*d* 603 (1964), a case which commends itself persuasively to reason and logic, the Supreme Judicial Court of Massachusetts held that the methods of discharge set forth in the Negotiable Instruments Law are exclusive, and no other method of discharge is available thereunder. As pointed out in that case, prior to the enactment of the Negotiable Instruments Law, an accommodation maker was held to be a surety, and it was held that when a payee on a note, without the consent of the surety, "impaired the collateral" given him as

security by the maker, the surety was discharged to the extent that the security was impaired. This rule has been applied in a situation where the payee failed to record a mortgage given to secure the debt. *Cf. Highland Inv. Co. v. Kansas City Computing Scales Co.,* 277 *Mo.* 365, 209 *S. W.* 895, 899 (*Mo. Sup. Ct.* 1919).

However, as the Massachusetts court pointed out, under the Negotiable Instruments Law, an accommodation maker is a surety only in the limited sense set forth in the Law, *i.e.,* to preserve in the accommodation party who pays the note the right of subrogation against the maker. No relationship of principal and surety is otherwise established. The law, said the court

"* * * determines the liability of the various parties to the negotiable instrument on the basis of that which is written on the paper."

There is no provision in the Negotiable Instruments Law which discharges the instrument because of the payee's impairment of collateral.

This case being, as above stated, governed by the provisions of the Negotiable Instruments Law, it follows that the defendants are not entitled to the rights of sureties except to preserve their rights of subrogation against G. R. Wood, Inc. or its receiver.

█ But even assuming that the defendants do possess the rights of sureties, the court fails to find that the security here was "impaired" so as to effect a discharge of the defendants to the extent of the value thereof. The cases cited by the defendants all deal with situations where the payee holding and having control of the security failed, through neglect or want of reasonable diligence, to preserve or appropriate it, or where the payee actually relinquished or diminished the value of the collateral, to the detriment of the surety. *Cf. Boorstein v. Miller,* 124 *N. J. Eq.* 526 (*Ch.* 1938).

In the present case, the mortgaged bus was left in the possession of G. R. Wood, Inc. and was operated by it until

the receiver was appointed. Thereafter it was operated by the receiver, obviously for the benefit of the company and of all its creditors, until its sale by leave of the court. At no time did the plaintiff have physical possession or control of the bus. It did not discharge the collateral nor did it do anything to damage or impair it. The operation of the bus by the receiver was in the interests of all the creditors of the company, including the defendants, to the end that, by the rehabilitation of the company, its debts might be paid and all interests made whole. Surely it was not negligent on the part of the plaintiff to permit the continued use of a basic physical asset to this end.

Assuming, however, that the plaintiff could have reclaimed or repossessed the bus (which would have further impaired the ability of the company to operate and attempt to regain a solvent position), and that the defendants urged such action on the plaintiff, the clear answer is that the defendants could have fully protected themselves by surrendering the bus to the plaintiff, or, after the receivership, by paying the debt, taking an assignment of the chattel mortgage, and reclaiming the bus themselves. This they did not do. *Cf. J. I. Case Threshing Machine Co. v. Van Vors*, 190 *Iowa* 543, 160 *N. W.* 656 *(Iowa Sup. Ct.* 1920) ; *Blanding v. Wilsey*, 107 *Iowa* 46, 77 *N. W.* 508 *(Sup. Ct.* 1898) ; *Fuller v. Tomlinson Bros.*, 58 *Iowa* 111, 12 *N. W.* 127 *(Sup. Ct.* 1882).

The bus was preserved and operated by the receiver and eventually sold by him for a reasonable price. The defendants have been credited with the net proceeds, less an allowance of $200 to the receiver for expenses of sale, which the court finds is reasonable.

The plaintiff is entitled to judgment against the defendants, James Knight, Michael N. Kouvatas, Joseph Forte, Jr. and Joseph Matthews, for $2650 together with interest on $4000 from June 30, 1962 to January 8, 1965, the date of sale of the bus, and on the balance of $2650 from that date to the date of entry of judgment. The plaintiffs are further entitled to judgment for an attorney's fee as provided in the

note. *Bancredit Inc. v. Bethea*, 65 *N. J. Super.* 538, 552 (*App. Div.* 1961). Since the sum of $1350 has been realized from the sale of the collateral, the principal amount recovered in this litigation is $2650, and judgment for the attorney's fee should be for 15% of that sum, or $397.50. Costs to the plaintiff. An Order for Judgment may be submitted accordingly.