Welsh, J.
This is a civil action in contract for the recovery of a deficiency alleged to be due on a promissory note after foreclosure sale of a mortgage on certain real estate in which the defendants owned the equity of redemption. Both defendants were comakers of the promissory note which was secured by the mortgage.
The defendants answered by way of a general denial. No other defenses were pleaded in the answer.
The court found in favor of the plaintiff against the defendant Armand Lebel in the sum of $4300.00 and dismissed the complaint as to the defendant Janet Lebel.
Neither party filed requests for rulings of law, but the trial court sua sponte reported the case to the appellate division for determination. General Laws Chapter 231, § 108.
1. Before discussion of the facts, we deem it imperative to comment on the procedural posture of this case. The authority of a trial judge to make a voluntary report of a case to an appellate division is not without limits. Patrick v. Mikolaitis, 22 Mass. App. Dec. 167, 168 (1961 )[2]. The power of a judge to make a report in an action at law is wholly the creature of statute, and limitations must be observed in exercising the power. Pierce’s Case, 325 Mass. 649, 651 (1950); Doten v. Brockton, 3 Mass. App. Dec. 34, *21 35 (1951). Apart from statute and court rules permitting the reporting of cases in the discretion of trial judges, appellate courts have further delimited the circumstances under which a case may properly be reported. Krock v. Consolidated Mines & Power Co., 286 Mass. 177, 179-180 (1934). The reported cases counsel a careful use of discretion, recognizing that as a general rule the parties to a litigation rather than the court should initiate the appellate process. The power to make a voluntary report was never intended to transform the appellate court into an advisory board for the direction of business in the trial court. Vautier, Petitioner, 340 Mass. 341, 344 (1960). Mott, speculative, hypothetical or subsidiary questions should not be reported and ordinarily will not be considered by the appellate court. O’Brien v. Dwight, 363 Mass. 256, 277-279 (1973); John Hetherington & Sons, Ltd. v. William Firth Co., 212 Mass. 257, 259 (1912); Murphy v. Boston, Clinton & Fitchburg Railroad Company, 110 Mass. 465, 466 (1872). Generally, a trial judge does not have authority to include in his report questions that might have been raised but were not in fact raised. Crowe v. Boston & Maine Railroad, 242 Mass. 389, 392-393 (1922); Daddario v. Gloucester, 329 Mass. 297, 299-300 (1952). It is generally required that a request for a ruling of law be sought in the trial court on the point sought to be presented in a report. A court will not ordinarily spend time in elucidation of matters not deemed by those in interest as worthy of their own reasoning faculties. Soscia v. Soscia, 310 Mass. 418, 420 (1941); Wasserman v. Caledonian-American Ins. Co., 326 Mass. 518, 519 (1950). A question of fact or a question as to the exercise of discretion by the trial judge may not properly be reported. Commonwealth v. National Contracting Co., 210 Mass. 248, 249 (1909); Younis v. Mario Musto Corporation, Mass. App. Div. Adv. Sh. (1979) 240, 242.
There are a number of common and well recognized exceptions to the general rule disfavoring such voluntary reports. Among these are cases in which a party through ignorance or inattention has lost a meritorious claim of appeal which the court also wishes to include in a report. Granger v. Lovely, 302 Mass. 504, 506-507 (1939). A special application of this are those cases in which a party fails to file a timely request for report, or to take some other procedural step to perfect an appeal and the trial court is of the opinion that the question sought to be raised is possessed of sufficient merit to warrant review. East Hampton Bank & Trust Co. v. Collins, 287 Mass. 218, 219 (1934)[3]; Newcomb v. Hayes, 24 Mass. App. Dec. 161 (1962). See Mathewson v. Colpitts, 284 Mass. 581, 584 (1933).
Where a case presents no unusual questions of law, and particularly, where the case is tried on its merits and the parties themselves are not sufficiently concerned to save for review any questions of law by filing requests for rulings or otherwise taking appropriate steps to secure appellate review, such voluntary reports are not to be condoned. See Paulino v. Concord, 259 Mass. 142, 144 (1927). Here, the parties filed no requests for rulings. Indeed, the answer filed by the defendants failed to raise the question of discharge or any suretyship defense, which is the central question raised by the report. When such defenses are not pleaded, they are not open for consideration on report. Nowell v. Equitable Trust Co., 249 Mass. 585, 595-597 (1924)[4]. We conclude that under the circumstances this was not an appropriate case for a voluntary report.
2. We proceed to a consideration of the questions raised by the report. The memorandum of decision which was adopted by the trial judge as his voluntary report indicated the following:
The defendants jointly and severally executed and delivered to the plaintiff a pro *22 missory note in the principal sum of $18,500.00 on January 5, 1972. The note was secured by a mortgage on certain real estate. After a default, a forclosure sale was conducted, leaving a deficiency of $4,758.32. This action was commenced by the bank as holder of the note to recover the deficiency.[5] As a result of negotiations between the agent of the plaintiff and the defendant Janet Lebel, the bank executed and delivered to the defendant Janet Lebel a release of attachment of real estate standing in her sole name and orally agreed not to seek further payment on the note from her. Although the report does not so indicate, the brief of the defendant Armand Lebel indicates that Janet paid the sum of $500.00 for the release-of attachment and promise not to pursue her for the balance due on the note.[6] The trial judge awarded the sum of $4300.00 to the plaintiff against the defendant Armand Lebel and dismissed the action as to the defendant Janet Lebel.
We reiterate that the defendant answered by way of a general denial and was not entitled as of right to raise the issue of discharge at trial. Discharge is an affirmative defense which ought to have been set up by the defendant in his answer if he intended to rely on it. Shapiro v. Lyon, 254 Mass. 110, 116 (1925); Belli v. Forsyth, 301 Mass. 203, 206 (1938). The burden was on the defendant to prove that he was discharged. See Abrain v. Pereira, 336 Mass. 460, 462 (1957). Since the case was tried on that theory, we choose not to disregard it on appeal. Baker v. Commercial Union Ins. Co., Mass. (1981 )a
The issue presented is whether or not the conduct of the bank as described in the report released and discharged the defendant Armand as a matter of law. We shall assume in favor of the defendant that he neither knew of nor consented to the bank’s actions as regards Janet nor ratified the same afterwards.
The general rule is that payment of a lesser sum than the amount due on a liquidated or undisputed obligation will not afford consideration for a promise not to look to the obligor paying such sum for payment of the balance due. Smith v. Bartholomew, 42 Mass. (1 Met.) 276 (1840); Foakes v. Beer, L.R. 9 A. C. 605 (1884). The bargained for release of real estate attachment by the creditor in addition to the payment would afford sufficient consideration for such a promise. We therefore pass the question of the enforceability of the promise of the creditor by the defendant Janet Lebel.
The rule at common law was that the release of one or more joint or joint and several obligors without an effective reservation of rights or without the consent of the remaining obligors constituted a discharge of the underlying obligation and consequently the remaining obligors. Hale v. Spaulding 145 Mass. 482 (1888). This principal was recognized in the common law of this Commonwealth from the earliest times. See Ruggles v. Patten, 8 Mass. 480, 482 (1812). There were certain formal requirements: To be effective, the release had to be written and under seal. Hale v. Spaulding, supra, p. 483. The writing had to manifest an unequivocal intention to discharge the obligor from an existing of an assumed duty. CORBIN CONTRACTS (One Volume ed. 1952) §1238, p. 993. An oral statement by acreditorto one of the debtors that the debt was discharged was not legally operative as such. CORBIN, supra, § 1240, p. 993. Of equal importance was the requirement that the release be a sealed instrument. Shaw v. Pratt, 39 Mass. (22 Pick.) 305 (1837); Gold Medal Sewing Machine v. Harris , 124 Mass. 206, 208 (1878). Understandably, courts have disfavored the common law rule relating to discharge restricting its operation within narrow limits where discharge was effected only by formal release under seal. The main cause for disenchantment is that the rule *23 generally operated directly contrary to what may be supposed to be the actual intent of the parties.
In the real world of commerce, it is neither unusual nor unreasonable for a creditor to release one of several joint obligors in exchange for something less than or different from performance of the underlying obligation, with the expectation to look to the remanining obligors for satisfaction of the balance. Yet, a written release under seal by the creditor to one joint debtor extinguished the obligation, thereby frustrating the reasonable expectation of the creditor and giving an unearned windfall to the remainin debtors, a result none of the parties contemplated. Painfully aware of the gap between judicial conceptualization and the realities of the market place, courts resorted to a number of legal fictions and similar devices to avoid the inexorable operation of the inflexible rules as to discharge. Among these is the venerable “covenant not to sue” and a release with an express reservation of rights, the latter of these being first conceived as a contradiction in terms. The principal objection to this approach is that the result in a given case turned rather upon the form of the instrument used (usually a function of the legal astuteness of the parties or their attorneys) than the actual intent of the parties. The assumption underlying the common law rule as to discharge of joint or joint and several obligors was an erroneous application of the law of contradiction. It was thought impossible that at the same time an obligation might be deemed discharged as to one joint obligor but not as to others, due to the unitary nature of the performance due. There were a number of other reasons offered for the existence of the rule, none of which were entirely satisfactory. CORBIN, supra, §931, p. 897.
The point of departure for modem jurisprudence on this issue is markedly different. Instead of focusing on the indivisibility of the obligation itself and the fact that a single performance is due, it concerns itself primarily with the jural relations among the joint obligors, as impacted by the conduct of the obligee towards the one relieved of his obligation. Concepts from the law of suretyship originally developed in equity were found to be well suited to the task. Instead of examining the form of the instrument, the crucial question for judicial inquiry now became to what degree, if at all, does the release, forbearance or covenant not to sue impede the rights of the joint obligors to exoneration, reimbursement and subrogation from one another. The rights to obtain contribution or indemnity from joint obligors was early recognized in the law of contracts, and afforded an equitable basis for adjusting the losses among such obligors. Courts under this approach undertake to examine whether the actions of the creditor in excusing one joint obligor have prejudiced the rights of the others to obtain indemnification, exoneration or subrogation, or impaired collateral for the obligation. Stanley v. Ames, Mass. (1979)b 1612, 1615-1617; See Rose v. Homsey, 347 Mass. 259, 261 (1964); Priggen Steel Buildings Co. v. Parsons, 350 Mass. 62, 64 (1966); RESTATEMENT (SECOND) OF CONTRACTS §294.
The UNIFORM COMMER1CAL CODE adopts this modem approach. G.L.c. 106, §3-606 provides, in part, as follows;
§3-606. Impairment of recourse or of collateral. (1) The holder discharges any party to the instrument to the extent that without such party’s consent the holder
(a) without any express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person...;
*24 (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse....
The report does not contain any evidence tending to show that Armand’s right to obtain contribution or indemnity was impugned, or that the plaintiff unjustifiably impaired any collateral for the underlying obligation. There is no evidence or other indication that Armand stood as surety for Janet, and more importantly, that the plaintiff knew or had reason to know of any right of recourse by Armand against Janet. The burden was on Armand to offer evidence on these issues. See Palumbo v.DiMare, 299 Mass. 212 (1938); Nashua Savings Bank v. Abbot, 181 Mass. 531 (1902). In the absence of proof, the agreement not to look to the defendant Janet does not entitle the defendant Armand to be deemed discharged.
We have deliberately eschewed the mire of technicalities long associated with the form of instrument to effect the release. We observe that the defendant Armand might have had his rights against Janet determined in the instant case by filing an appropriate crossclaim, thereby avoiding circuity of action. Since such crossclaims are permissive and not mandatory, a separate action would seem to be open if Armand has any claim against Janet.
We determine that there was no prejudicial error in the entry of judgment for the plaintiff against the defendant Armand Lebel and dismissing the action as to the defendant Janet Lebel. An order is to enter dismissing the report.

So Ordered

 for an excellent discussion generally as to the conditions for making a report in the discretion of the court, see Scaccia v. Boston Elevated Ry., 317 Mass. 248-251 (1944).

 The power of district court judges to make voluntary reports has been compared to the power of the Superior Court and other trial courts to make such reports under G.L.c. 231. & 111: at p 219.

 It is observed that the present report is not the functional equivalent of a "case stated", in which all questions of pleading are ordinarily waived. See Nowell, supra, at p. 596.

 There is no indication in the report that a notice of intent to sue for deficiency was given pursuant to G.L.c. 244, § I7B. We shall assume that such a notice was given, since it was a condition precedent to recovery.

 The brief of the appellant is not part of the recordon appeal. We shall assume this is true for purposes of this appeal.
aMass. Adv. Sh. (1981) 176, 178, footnote 5.
*23 bMass. Adv. Sh. (1979) 1612. 1615-1617.