Belford, J.
This is an appeal by the defendants Donald and Margaret Kent and Herbert and Kathy Woodward to the Brockton District Court’s finding in favor of the plaintiffs, Jacob Chaskes, Trustee of Jacob Chaskes Revocable Trust Agreement, and Rhoda H. Chaskes, Trustee of Rhoda H. Chaskes Revocable Trust Agreement, in the amount of $209,200 for principal and interest payments incurred as a result of a default of a second mortgage.
The sole issue on appeal is whether the Chaskes impaired the collateral by twice agreeing to subordinate their second mortgage to subsequent first mortgages thereby prejudicing the defendants by reducing their subrogated positions. We find no error.
On August 10, 1983, Herbert Woodward, Robert S. Lothrop, Thomas M. Pee-bles, and Donald W. Kent, individually and as trustees of the Ashton Gardens Realty Trust, and Kathy S. Woodward, Clydette J. Lothrop, Kathleen M. Peebles, and Margaret M. Kent, as individuals, executed a purchase money second mortgage note representing a principal indebtedness of $200,000 in favor of the Ashton *103 Realty Trust. On the same date, Robert S. Lothrop, as trustee of the Ashton Gardens Realty Trust, executed a corresponding mortgage to secure the payment of the note. The Ashton Realty Trust assigned the mortgage to the plaintiffs at bar on November 16,1990. The mortgage was originated to facilitate the purchase of the forty-nine unit Ashton Gardens Apartment Complex located in Brockton. The mortgage had a ten-year term during which the defendants were only responsible for interest payments until September 10, 1993, when the entire balance of $201,000 became due. The first mortgage on the property was held by Rockland Trust Company in the principal amount of $975,000.
On January 8,1985, Ashton Gardens Realty Trust refinanced the property with Rockland Trust in the amount of $1,160,000 in order to make some improvements to the property. At that time, the plaintiffs executed a subordination agreement to facilitate the refinancing of the property. On November 23,1990, Ashton Gardens Realty Trust refinanced the property with Citicorp Mortgage, Inc., in the amount of $1,500,000 so that Robert Lothrop could purchase the interests of the Kents and the Woodwards. Again, the plaintiffs executed a subordination agreement. The end result was that the second mortgage was subordinate to a $1,500,000 first mortgage.
The defendants claim that by signing in their individual-capacity they were accommodation parties to the note and entitled to the defenses provided for in M.G.Lc. 106:3-606(1) (b).[4] M.G.Lc. 106:3-415(1) defines an accommodation party as “one who signs an instrument in any capacity for the purpose of lending his name to another party to it.” Therefore, the defendants are accommodation parties because they signed the mortgage and note to assist the Ashton Gardens Realty Trust in obtaining the purchase money second mortgage. In fact, the Chaskes demanded such assurances. However, the defendants’ status as accommodation parties does not automatically relieve them of liability. M.G.Lc. 106:3-415 (2) states the accommodation party’s liability as follows:
(2) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.
Thus, the defendants are liable to the same extent as the Ashton Gardens Realty Trust unless they can invoke the protection provided in M.G.L.C. 106:3-606(1) (b). The defendants cite Rose v. Homsey, 347 Mass. 259 (1964) in furtherance of then-defense pursuant to M.G.Lc. 106:3-606(1) (b). Although the defendant in Rose was unable to benefit from M.G.L.C. 106:3-606(1) (b) because the action arose prior to Massachusetts’ adoption of the Uniform Commercial Code, the court theorized that such relief would be appropriate where the defendant was an accommodation party to a second mortgage for her husband and the holder failed to properly record the mortgage thereby impairing the collateral for the instrument. Id. at 263.
Although persuasive, the case at bar differs from Rose in that the plaintiffs are able to invoke the defense of consent to forestall the defendants’ claims of discharge. According to U.C.C. Comment 2 to M.G.L.c. 106:3-606 “consent may be given in advance, and is commonly incorporated in the instrument, or it may be given afterward.”
The August 10,1983, mortgage note contains the following provisions:
Every maker, endorser and guarantor of this Note waives present *104 ment, demand, notice protest and all other demands and notices, assents to any extension or postponement of the time for payment or any other indulgence....
Additionally, Section 13 of the August 10,1983, mortgage contains the following provision:
... the parties agree and consent to the subordination of this second mortgage given to Jacob and Rhoda Chaskes, Trustees to any new first mortgage given to secure the re-financing of mortgagors note.
Thus, the parties to this transaction clearly gave consent in advance to any subordination and, in doing so, prevent the invocation of M.G.L.C. 106:3-606(1) (b) for any impairment to the collateral that may have arisen as a result of the subsequent subordinations.
There is nothing in the record to indicate that the District Court’s application of the above law in the case at bar is clearly erroneous. See, United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).
We affirm the holding of the District Court.

 The holder discharges any party to the instrument to the extent that without such party’s consent the holder ... (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.