## PROVIDENCE, FALL RIVER & NEWPORT STEAMBOAT CO. v. MASSACHUSETTS BAY S. S. CORPORATION et al.

### No. 3516.

District Court, D. Massachusetts.

Feb. 26, 1930.

John M. Maloney, of Boston, Mass., for plaintiff.

Edmund A. Whitman, Alfred C. Blake, and Elder, Whitman, Weyburn & Crocker, all of Boston, Mass., for defendant American Surety Co. of New York.

Sherburne, Powers & Needham and Arthur W. Sullivan, all of Boston, Mass., for defendant Massachusetts Bay S. S. Corporation.

MORTON, District Judge.

This is an action upon a bond made to the plaintiff by the Massachusetts Bay Steamship Corporation as principal, and the American Surety Company as surety. The facts are as follows:

In July, 1926, the plaintiff sold to the defendant steamship corporation the steamer Monhegan. The price was $35,875. Ten thousand dollars was paid in cash at the time of the delivery of the steamer, and a mortgage back was given for the balance, of which $10,000 was paid sixty days later. The remainder, $15,875, was never paid.

As part of the transaction, the plaintiff required security against maritime liens to which the steamer might become exposed while being operated by the purchaser before payment was completed. The bond in suit was given for that purpose. The purchaser's agreement to save the Monhegan harmless from maritime liens was not kept. Various lien claims were contracted against her while in its possession. The earliest of them arose on July 14, 1926, almost immediately after her delivery; the latest, in December, 1926, for wages of the crew. For these claims she was libelled in this district, the claims were established, and the vessel sold in those proceedings. The present plaintiff bought her at Marshal's sale for $5,000, which was paid into court. It is this amount, plus the expenses incidental to the lien proceedings, which is sought to be recovered in the present action.

There is no controversy about the facts as above stated, nor as to the execution and delivery of the bond. It and the annexed letter are of some length; and, as all parties are familiar with their terms and conditions, there is no necessity to copy them here. The matter is complicated from the legal point of view by the fact that the plaintiff neglected to record its mortgage until January, 1927. It was a preferred mortgage, and if properly recorded would have taken priority over all the lien claims except those for wages. 46 USCA § 953.

Various contentions are made for the defendant surety company, and substantially the same argument by the defendant in its effort to protect the persons who indemnified the surety company on its behalf. The first contention is that the surety was discharged by the plaintiff's failure to record the mortgage until after the liens had accrued. It was argued as if the bond related to the payment of the purchase price, and consequently was discharged by the creditor's negligence in respect to the security for such payment. This is not so. The mortgage, except for the condition that no liens should be permitted to arise, had nothing to do with lien claims; and the bond had nothing to do with the payment of the purchase price. Payments on the liens were not chargeable against the mortgage; and the surety company, if it had satisfied the liens, would have had no right of subrogation to the mortgage security. Moreover, the surety company guaranteed against all liens, those junior to the mortgage, as well as those which preceded it.

There is, however, another aspect to this defence which, though not explicitly argued, must be noticed. As has been pointed out, the contract of sale, including the mortgage provision of it, did not directly enter into the undertaking of the bond. It constituted, however, the reason or inducement for the bond, the circumstances under which it was entered into. We are dealing, not with the question how far a surety who has guaranteed the performance of a contract is released by subsequent alterations in it made by the contracting parties, but with a change made by the creditor in the state of facts on which an independent contract of guaranty rests. Such variations "indirectly affecting the probability of performance by the principal" may discharge the surety. 2 Williston on Contracts § 1241; Cases collected 31 C. J. p. 443. The test is whether the change made by the parties to the underlying contract was of such character as to increase the surety's liability. See Holme v. Brunskill 3 Q. B. D. 495, an interesting case in which the dissenting opinion seems to me much

the sounder law. Whether there has been such a change is a question of fact; and where, as here, the contract to which the surety is a party is independent of the contract between the principal and the creditor, the burden is upon the surety to show that the change in circumstances materially increased the risk.

 In the present case, there is no direct testimony upon the point, and it must be decided on rather inadequate evidence. For the surety company, it may be said that the Monhegan was much more likely to receive credit for supplies and repairs if apparently unincumbered, than would have been the case if she were known to be subject to the mortgage; on the other side, that the equity in the steamer was relatively large, and even if the mortgage had been recorded, the lienors might still have thought it prudent business to furnish her on credit items of such current character as made up the lien claims. Of course, tort and salvage claims and wages preceded the mortgage in any event. 46 USCA § 953. It seems reasonable to suppose that no large bills for extraordinary repairs could have been contracted on her credit if she were known to be mortgaged in the amount stated, while otherwise they might be. No such claims in fact arose, but they come within the scope of the bond, and the effect of the failure to record the mortgage on the surety company's liability is to be considered in the light of this possibility. The question is very doubtful on the evidence as it stands. I think it probable, however, that the failure to record the mortgage did constitute a material change to the disadvantage of the surety in the state of facts to which it was understood that the bond should relate, and I so find. It therefore operated to discharge the surety as to claims which originated after the expiration of a reasonable time to record the mortgage. As certain corrections had to be made in it, and it had to be recorded in two places, I find that ten days was a reasonable time for that purpose.

 The second point urged for the surety company is that the giving of the mortgage and mortgage note constituted "final payment" within the meaning of the bond and that, as they were delivered before the liens in question accrued, the surety company is not liable. This contention rests upon the assumption that the sale and the mortgage were made in Massachusetts, and is based upon the Massachusetts law creating a presumption of payment by the giving of a note.

There is no direct evidence as to where the transaction was consummated, except that the vessel was delivered in Providence. There is nothing in the note, bond, or mortgage to indicate where they were executed and delivered. Such slight inferences as the evidence affords do not support the defendant's contention. On the contrary, they suggest, for what they are worth, that the sale took place in Rhode Island and is accordingly governed by the law of that state. Moreover, even if the transaction were completed here, the terms of the bond and the attached letter show that it was clearly understood by all the parties that the bond was to continue in force after the mortgage and note had been delivered; and the presumption of payment is rebutted.

The third point made for the surety company has been disposed of by what has been said with respect to the first point.

 The fourth point is that the plaintiff suffered no loss because it did not pay any of the lien claims; in other words, that its purchase of the vessel at Marshal's sale was not the same thing as paying liens upon her. The surety company's obligation to save the plaintiff harmless from liens was not conditional upon demand by the plaintiff. Welch v. Walsh, 177 Mass. 555, 59 N. E. 440, 52 L. R. A. 782, 82 Am. St. Rep. 302. If it had been met, the vessel would not have been libelled or sold. The total liens and the costs on them, as decreed by the admiralty court, amounted to $5,076.23. The plaintiff bought in the vessel for $5,000. The Marshal's expenses incidental to her keeping and sale came to $849.34. The total amount which would have been required to redeem the vessel, either before or after the sale, would have exceeded the sum paid for her. The lien claims for seamen's wages were paid in full, amounting, with costs, to $596.84. These would in any event have preceded the mortgage. The other claims were ranked together and amounted to $3,472.93 on which a fraction over 73 per cent. was realized. These figures make it clear that the plaintiff cut down the expense of protecting the vessel from the liens by the course which it took, i. e., by buying her in instead of paying the liens and costs. As the admiralty proceedings were caused by the default of the obligor and the surety on the bond, they would be chargeable, except for the failure to record the mortgage, with the $5,000 (plus $5.00 for bill of sale) which was admittedly paid by the plaintiff to get the vessel back free of liens; and, in addition to this, with the $1,200, or

as much of it as was a reasonable charge, paid by the plaintiff in endeavoring to protect the vessel against the lien claims.

The final point made for the surety company is that the expenses incurred by the plaintiff, including the payment at the Marshal's sale, were incurred and paid after the bond had expired, i. e., more than six months after July 15, 1926. Inasmuch as the condition of the bond was to indemnify the plaintiff and hold it harmless "against all debts contracted for account of said boat for the period of six months from the date of sale," and as all the claims in suit in the admiralty proceedings arose within that interval, they came, in my opinion, within the terms of the bond.

The plaintiff's expenses in getting the boat back to Providence do not appear to be chargeable against the defendants.

This disposes of the contentions made for the surety company. As above stated, those made by the defendant steamship corporation are substantially the same. It is certainly in no better position than its surety. They are sufficiently dealt with by what has already been said. The question whether the defendant is liable for the liens other than on the bond is not presented by these proceedings.

The mortgage appears to have taken effect on July 15, 1926; and the ten days for amendment and recording of it expired on July 25, 1926. For such lien claims as arose on or before the latter date, together with the reasonable expenses of defending the vessel against them, the defendant and the surety company are liable. As there appear to be such claims, the order will be judgment for the plaintiff for the penal sum of the bond, and a reference to an assessor to state the amount for which execution should issue. Mass. Gen. Laws c. 235, § 9 et seq.

Ordered accordingly.