USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 96-2009 IN RE HELEN D. GENS, d/b/a HELEN GENS AND ASSOCIATES, Appellant, v. RESOLUTION TRUST CORPORATION (FEDERAL DEPOSIT INSURANCE CORPORATION), Appellee.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Reginald C. Lindsay, U.S. District Judge] ___________________  ____________________ Before Selya, Circuit Judge, _____________ Cyr, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________  ____________________ Richard H. Gens for appellant. _______________ Barbara R. Sarshik, Counsel, FDIC, with whom Ann S. DuRoss, ____________________ ______________ Assistant General Counsel, FDIC, Thomas L. Hindes, Senior Counsel, _________________ FDIC, Joseph G. Butler, and Barron & Stadfeld were on brief for __________________ __________________ appellee.  ____________________ May 5, 1997  ____________________ CYR, Senior Circuit Judge. Chapter 11 debtor-in- CYR, Senior Circuit Judge. ______________________ possession Helen D. Gens ("Gens") challenges a bankruptcy court order which allowed the Federal Deposit Insurance Corporation ("FDIC") to amend its proof of claim following the bar date for filing claims. We affirm. I I BACKGROUND BACKGROUND __________ In July 1988, Gens executed a promissory note ("the Gens Note") payable to U.S. Funding Inc. of America ("U.S. Funding") in the principal amount of $70,000, by signing it both in her "individual" capacity and in her representative capacity as trustee for the Old Jail Trust ("Trust"). The Gens Note was secured by a third mortgage on real property in Barnstable, Massachusetts, owned by the Trust ("the Barnstable Property"). Although the Barnstable Property was subject to two prior mortgages, U.S. Funding and Gens allegedly arranged for $36,000 of the $70,000 in loan proceeds to be used to satisfy the preexisting second mortgage. U.S. Funding promptly assigned the Gens Note to Key Financial Services ("Key"), which assigned it to Home Owners Savings Bank ("Home Owners").  In October 1989, Home Owners commenced suit against Key in federal district court, alleging that the purchase-sale agreement, whereby Home Owners acquired the Gens Note from Key, had been induced by fraud or that Key had breached its title- __ insurance provisions. Home Owners demanded either rescission or damages for breach of contract.  2 The Trust defaulted on the Gens Note in or about January 1990 and the first mortgagee foreclosed on the Barnstable Property. The foreclosure sale resulted in no surplus for application to any junior lien, including the third mortgage securing the Gens Note. In September 1990, Home Owners was declared insolvent and the Resolution Trust Corporation ("RTC") was appointed receiver. RTC designated Knutson Mortgage Corporation ("Knutson") as its servicing agent on the Gens Note, and gave Knutson a limited power of attorney.  Meanwhile, in the ongoing federal action brought by Home Owners against Key, the district court entered partial summary judgment for RTC and Home Owners, finding that Key had breached the purchase-sale agreement. The attendant district court order directing Key to repurchase the Gens Note never became final, however, apparently because RTC and Key were unable to agree upon a repurchase price.  Gens commenced a voluntary chapter 11 proceeding in September 1993, but failed to schedule the Gens Note as a liability. Knutson, as RTC's agent, filed a proof of claim ("POC") in relation to the Gens Note in December 1993 ("original POC"), well before the May 16, 1994 bar date for filing claims. The original POC incorrectly listed Knutson itself as the creditor, failed to disclose that Knutson was the authorized RTC servicing agent, mischaracterized the claim as secured, and mistakenly identified February 24, 1989 (rather than July 1988) as the date Gens incurred the Gens Note obligation.  3 Almost seven months after the bar date, Knutson filed an amended POC in relation to the Gens Note, correctly listing RTC as the creditor, but still (i) failing to disclose that Knutson was RTC's agent, and (ii) incorrectly characterizing the claim as "secured." Knutson eventually submitted additional amended POCs correcting these deficiencies. Gens objected to the original and amended POCs, asserting inter alia judicial estoppel and discharge of the note, _____ ____ see Mass. Gen. Laws Ann. ch. 106, 3-606. While these ___ objections were pending, FDIC, successor to RTC, was substituted as the creditor on all POCs filed by Knutson. Ultimately, the objections to the original and amended POCs were rejected by the bankruptcy court and the district court affirmed. II II DISCUSSION DISCUSSION __________ A. Judicial Estoppel A. Judicial Estoppel _________________ The companion doctrines of judicial estoppel and election of remedies1 essentially preclude a party from asserting a legal or factual position "inconsistent" with its position in a prior proceeding. See Patriot Cinemas, Inc. v. General Cinema ___ ______________________ ______________ Corp., 834 F.2d 208, 212 (1st Cir. 1987). The estoppel defense _____ advanced by Gens is predicated entirely on the contract- rescission claim Home Owners asserted in the federal court action  ____________________ 1The "election of remedies" defense likewise derives from the equitable doctrine of estoppel. See Butcher v. Cessna ___ _______ ______ Aircraft Co., 850 F.2d 247, 248 (5th Cir. 1988), cert. denied, _____________ _____ ______ 489 U.S. 1067 (1989); In re Leonardi's Int'l, Inc., 123 B.R. 668, ____________________________ 669 (Bankr. S.D. Fla. 1991). 4 against Key, alleging inter alia that Key had made material _____ ____ misrepresentations in negotiating the purchase-sale agreement. Implicit in Home Owners' demand for rescission of the purchase- sale agreement was its averment that Key's fraud rendered the purchase-sale agreement voidable ab initio, and therefore that __ ______ Home Owners never became a "holder" of the Gens Note. See, e.g., ___ ____ In re Southern Indus. Banking Corp., 46 B.R. 306, 313 (Bankr. _____________________________________ E.D. Tenn. 1985) ("A party to a transaction induced by fraud may elect between two remedies he may treat the contract as voidable and sue for the equitable remedy of rescission or he may sue for damages at law under the tort theory of 'deceit.'"). In January 1992, the district court awarded summary judgment to RTC on its contract claim. Gens now contends, therefore, that FDIC is estopped from asserting a claim under the Gens Note in her bankruptcy proceeding, since its POC is legally and factually inconsistent with the litigation position adopted by Home Owners in the district court action, namely, that Home Owners never became a holder of the Gens Note because the purchase-saleagreementwasrescindablefromitsinception.Wedisagree.2  ____________________ 2Although Gens argues that the bankruptcy court decision must be reviewed de novo, we have yet to determine the exact __ ____ standard for reviewing applications of the doctrine of judicial estoppel. See Desjardins v. Van Buren Community Hosp., 37 F.3d ___ __________ _________________________ 21, 23 (1st Cir. 1994) (expressly reserving question); cf. ___ McNemar v. Disney Store, Inc., 91 F.3d 610, 613 (3d Cir. 1996) _______ ___________________ (adopting "abuse of discretion" standard), cert. denied, 117 S. _____ ______ Ct. 958 (1997); Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1565 ________________ _______ (Fed. Cir. 1996) (same); Yanez v. United States, 989 F.2d 323 _____ _____________ (9th Cir. 1993) (same). "In reality, judicial estoppel is not extrinsically a matter of fact or law; the issues that arise may turn out to be ones of raw fact, abstract law, or something in between, e.g., the application of a general standard to a known 5 Judicial estoppel is not implicated unless the first forum accepted the legal or factual assertion alleged to be at ________ odds with the position advanced in the current forum: [W]here a party assumes a certain position in a legal proceeding, and succeeds in ________ maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. . . . Judicial estoppel should be employed when a litigant is "playing fast and loose with the courts," and when "intentional self-contradiction is being used as a means of obtaining unfair _________ advantage in a forum provided for suitors seeking justice." Patriot Cinemas, 834 F.2d at 212 (emphasis added) (citations ________________ omitted).3 Similarly, the primary purpose served by the  ____________________ set of facts." Desjardins, 37 F.3d at 23. It is not necessary __________ to determine the precise standard of review at this juncture, however, since the bankruptcy court ruling would be affirmed even on plenary review. See id. ___ ___ 3See United States v. Levasseur, 846 F.2d 786, 793 (1st ___ _____________ _________ Cir.) (estoppel applies where party previously "obtained a litigation benefit"), cert. denied, 488 U.S. 894 (1988); see also _____ ______ ___ ____ Continental Ill. Corp. v. Commissioner, 998 F.2d 513, 518 (7th ______________________ ____________ Cir. 1993), cert. denied, 510 U.S. 1041 (1994) (party must have _____ ______ "sold" its position to prior tribunal); Wang Lab., Inc. v. ________________ Applied Computer Sciences, Inc., 958 F.2d 355, 358 (Fed. Cir. _________________________________ 1992); In re A. Barletta & Sons, Inc., 185 B.R. 976, 980 (Bankr. _______________________________ M.D. Pa. 1995); In re Pierce Packing Co., 169 B.R. 421, 429-30 _________________________ (Bankr. D. Mont. 1994); In re UNR Indus., Inc., 143 B.R. 506, 526 ______________________ (Bankr. N.D. Ill. 1992), vacated on other grounds, 173 B.R. 149 _______ __ _____ _______ (N.D. Ill. 1994); Phillips v. FDIC (In re Phillips), 124 B.R. ________ ____ _______________ 712, 719 (Bankr. W.D. Tex. 1991); In re Merritt Logan, Inc., 109 __________________________ B.R. 140, 147-48 (Bankr. E.D. Pa. 1990); cf. also Crown Life Ins. ___ ____ _______________ Co. v. American Nat'l Bank and Trust Co. of Chicago, 35 F.3d 296, ___ ____________________________________________ 299 (7th Cir. 1994) ("An election of remedy occurs only when a party accepts the benefit of pursuing the initial remedy."); Leonardi's Int'l, Inc., 123 B.R. at 669 ("An election . . . _______________________ between legally inconsistent remedies can be made at any time prior to the entry of [final] judgment."); Collumb v. Wyatt (In _______ _____ __ re Wyatt), 6 B.R. 947, 951-52 (Bankr. E.D.N.Y. 1980) ("'The _________ 6 "election of remedies" doctrine is "to prevent double [viz., ____ sequential] recoveries for the same wrong." Tavormina v. Fir, _________ ____ Inc. (In re Alchar Hardware Co.), 764 F.2d 1530, 1534 (11th Cir. ____ _________________________ 1985).  Contrary to Gens' contention, RTC permissibly displaced its contract-rescission claim by moving for partial summary judgment on its alternative claim that Key had breached the purchase-sale agreement. See Fed. R. Civ. P. 8(e)(2) ("A party ___ may also state as many separate claims [in its complaint] . . . as the party has[,] regardless of consistency . . . .").4 Under an express provision in the purchase-sale agreement, the exclusive remedy for its breach was the repurchase of the Gens Note by Key upon demand by Home Owners. Thus, unlike a rescindment, which necessarily presumes a disaffirmance of the purchase-sale agreement by Home Owners ab ovo, the RTC breach-of- __ ___ contract claim implicitly acknowledged a valid contract whereby Home Owners became the holder of the Gens Note until Key repurchased the Note. Accordingly, the current FDIC litigation  ____________________ purpose of [the] doctrine [of election of remedies] is not to prevent recourse to any remedy, but to prevent double redress for a single wrong.'") (citation omitted). 4See, e.g., Desjardins, 37 F.3d at 23 ("There are many ___ ____ __________ situations, especially at the outset of litigation, where a party is free to assert a position from which it later withdraws or even to assert, in the alternative, two inconsistent positions of its potential claims and defenses."); Fort Vancouver Plywood Co. __________________________ v. United States, 860 F.2d 409, 415 (Fed. Cir. 1988) ("With the _____________ enactment of the Federal Rules of Civil Procedure, the traditional election doctrine was relaxed."); Grogan v. Garner, ______ ______ 806 F.2d 829, 838 (8th Cir. 1986) ("[T]he doctrine [of election] is remedial, and neither it nor the federal rules of pleading require an election of substantive theories.").  7 position is not inconsistent with that advanced by its predecessor, RTC, since Home Owners and RTC failed to persuade the district court that the purchase-sale agreement was voidable, hence invalid from its inception.5  B. Validity of Knutson Authorization B. Validity of Knutson Authorization _________________________________ Next, Gens contends that the original and amended POCs submitted by RTC are invalid because Knutson was not authorized to act as agent for RTC. See Fed. R. Bankr. P. 3001(b) ("A proof ___ of claim shall be executed by the creditor or the creditor's authorized agent . . . ."); see also Fed. R. Bankr. P. ___ ____ 9010(a)(2). Gens asserts that it would have demonstrated, at an evidentiary hearing, that RTC regulations, see 12 C.F.R.  ___ 1606.4; see also 12 U.S.C. 1441a(n)(6), presumptively ___ ____ disqualified Knutson from serving as an RTC agent because, as an affiliate of Home Owners, presumably it was complicit in whatever financial misfeasance or malfeasance led to the Home Owners insolvency. As the bankruptcy court aptly noted, however, Gens lacked standing to challenge Knutson's agency status. The RTC regulation pursuant to which Knutson was  ____________________ 5Furthermore, RTC had a legal obligation to file a POC against the Gens estate in order to preserve the position of Home Owners, which then held an unsecured claim against Gens. Finally, should Key repurchase the Gens Note, FDIC would realize no double recovery, since Key would become the claim holder of record. See Fed. R. Bankr. P. 3001(e)(2). ___ The "election of remedies" argument fails for yet another reason. Since the Trust and Gens did not default on the Gens Note until January 1990, Home Owners had no available remedy against Gens in 1989 when it filed its complaint against Key. The 1990 default by the Trust and Gens thus constituted a legal wrong distinct and severable from the breach of contract by Key.  8 designated is designed (i) to "ensure that contractors [hired by RTC] meet minimum standards of competence, integrity, fitness, and experience and are held to the highest standards of ethical conduct in performing services for RTC," (ii) to prevent "the direct or indirect use of information gained through performance of a contract . . . for personal gain not contemplated by the contract," and (iii) to preclude "the use of personal relationships or improper influence to gain unfair competitive advantage in obtaining contracts with the RTC." 12 C.F.R.  1606.1. The RTC regulation thus identifies two conceivable classes of intended beneficiaries: (1) competing contractors _________ ___________ which are unfairly denied RTC contract bids; and (2) the ___ taxpaying public, which may be harmed by RTC revenue losses _________ ______ resulting from "insider" conflicts of interest. Gens plainly cannot qualify under the first classification, as she is not a competing contractor. See, e.g., ___ ____ New Hampshire Right to Life Political Action Comm. v. Gardner, 99 __________________________________________________ _______ F.3d 8, 15 (1st Cir. 1996) ("[U]nder the principle of jus tertii, ___ ______ the plaintiff ordinarily 'must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties.'") (citation omitted). Moreover, no standing is conferred upon Gens, individually, by the generalized taxpayer benefit theme which actuates the second classification. See Libertad v. Welch, 53 F.3d 428, 436 (1st ___ ________ _____ Cir. 1995) (noting that claimant normally may not adjudicate "abstract questions of wide public significance which amount to 9 generalized grievances more appropriately addressed by the legislature"). Nothing in the statute, the RTC regulation or the attendant case law remotely suggests that Congress or the agency itself intended to confer standing on chapter 11 debtors to enforce the RTC regulation.6 See, e.g., Dubois v. United States ___ ____ ______ _____________ Dep't of Agric., 102 F.3d 1273, 1281 (1st Cir. 1996) (to ________________ demonstrate "standing," complainant must establish, inter alia, _____ ____ that her claim does not fall "outside the zone of interests protected by the specific law invoked") (quoting Allen v. Wright, _____ ______ 468 U.S. 737, 751 (1984)); Benjamin v. Aroostook Med. Ctr., Inc., ________ _________________________ 57 F.3d 101, 104 (1st Cir. 1995).7  C. Amendments to Original POC C. Amendments to Original POC __________________________ Gens next contends that the bankruptcy court erred in permitting RTC to amend its original POC (i.e., December 1993), ____ which incorrectly stated that Knutson was the claim holder, without disclosing that it was acting as RTC's agent. Gens represents that she reasonably believed Knutson held no valid  ____________________ 6Furthermore, even assuming she had standing, Gens has alleged no facts suggesting that Knutson contributed either to Home Owners' insolvency or to any "substantial loss" occasioned RTC. 7Gens argues that the POCs filed by Knutson were invalid because they were not signed by RTC's attorney. See Fed. R. ___ Bankr. P. 9010(a); 9011(a). But see Fed. R. Bankr. P. 3001(b) ___ ___ (POC may be signed by creditor or its authorized agent); compare, _______ e.g., Official Bankruptcy Form 1 (providing space for attorney ____ signature) with Official Bankruptcy Form 10 (POC form providing ____ no attorney-signature line). We need not resolve the present claim, however, since Gens concededly failed to raise it in the bankruptcy court. See Juniper Dev. Group v. Kahn (In re ___ ___________________ ____ ______ Hemingway Transp., Inc.), 993 F.2d 915, 935 (1st Cir.), cert. ________________________ _____ denied, 510 U.S. 914 (1993). ______ 10 claim in its own right. Further, she argues, since RTC failed to file a POC in its own name prior to the bar date, there was no timely POC to be amended. A bankruptcy court ruling allowing an amendment to a POC is reviewed for abuse of discretion, under three criteria: First, the proposed amendment must not be a _____ veiled attempt to assert a distinctly new right to payment as to which the debtor estate was not fairly alerted by the original proof of claim. Second, the amendment must ______ not result in unfair prejudice to other holders of unsecured claims against the estate. Third, the need to amend must not be _____ the product of bad faith or dilatory tactics on the part of the claimant.  Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.), 954 __________________ ____ ______________________________ F.2d 1, 10 (1st Cir. 1992) (citations omitted) (emphasis added). Leave to amend a POC should be "freely given when justice so requires." See Fed. R. Bankr. P. 7015.8 The bankruptcy court ___ did not abuse its discretion. First, in order to "fairly alert" the debtor estate, a POC need only "provide[] adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable." Unioil, Inc. v. H.E. Elledge (In re ____________ ____________ _____ Unioil, Inc.), 962 F.2d 988, 992 (10th Cir. 1992). The original _____________ POC, accompanied by a copy of the Gens Note, see Fed. R. Bankr. ___ P. 3001(c), met the general notice requirement. As Knutson was  ____________________ 8Bankruptcy Rule 7015 makes Fed. R. Civ. P. 15 (governing amendments to complaints) applicable in adversary proceedings. Although this case arose as a contested matter, rather than an adversary proceeding, Fed. R. Bankr. P. 9014 permits Bankruptcy Rule 7015 to be applied in contested matters. In re Stavriotis, ________________ 977 F.2d 1202, 1204 (7th Cir. 1992). 11 duly authorized to file the original POC for RTC, see supra ___ _____ Section II.B, the mere failure to disclose Knutson's agency status in no sense affected the validity of the claim itself. As the Tenth Circuit correctly recognized in Unioil, a simple ______ substitution of the real party in interest (viz., RTC) for a ____ related party mistakenly listed in the original POC (viz., ____ Knutson qua agent) represents a proper ground for amendment. See ___ ___ Unioil, 962 F.2d at 992 (permitting amendment where a trustee ______ (rather than the trust) was incorrectly listed as creditor).9 Second, Gens points to no unfair prejudice from any deficiency in the original POC. See Hemingway Transp., 954 F.2d ___ _________________ at 10; see also Unioil, 962 F.2d at 993 (noting that party ___ ____ ______ opposing amendment must show actual prejudice). Instead, she suggests simply that allowing the RTC amendment prejudices unsecured creditors, who may receive less under any reorganization plan than would have been received were the FDIC claim not allowed. But the standard Gens proposes would preclude virtually any amendment, since it dispenses with the requirement that the debtor or trustee show "unfair" prejudice. Thus, something more than mere creditor disappointment is required to preclude amendment. See In re Stoecker, 5 F.3d 1022, 1028 (7th ___ _______________  ____________________ 9Nor would the two remaining defects in the original POC bar amendment. First, as trustee for the Old Jail Trust, Gens had every reason to know that the original characterization of the POC, as "secured," was mistaken, since the first mortgagee already had foreclosed on the Barnstable Property securing the Gens Note. Second, the mistaken date assigned to the underlying debt instrument was a minor defect, given that the Gens Note itself was attached to the POC.  12 Cir. 1993); In re Outdoor Sports Headquarters, Inc., 161 B.R. _________________________________________ 414, 422 (Bankr. S.D. Ohio 1993); In re Brown, 159 B.R. 710, 716 ___________ n.5 (Bankr. D.N.J. 1993); In re Dietz, 136 B.R. 459, 468-69 ____________ (Bankr. E.D. Mich. 1992).  Gens neither alleged nor demonstrated that any creditor acted in detrimental reliance on any representation or omission in the original POC. See, e.g., Brown, 159 B.R. at 716 ___ ____ _____ (permitting POC amendment from unsecured to secured, given that "no evidence has been offered that anyone relied to their detriment upon the claims as originally filed"). Nor did Gens allege either bad faith or dilatory motive. Moreover, these RTC amendments occurred long before the formulation of a chapter 11 plan. See Holstein v. Brill, 987 F.2d 1268, 1270 (7th Cir. 1993) ___ ________ _____ (characterizing confirmation of debtor plan as "passing milestone" that makes it more likely POC amendment may be prejudicial).  To be sure, Knutson demonstrated considerable laxity in executing its agency responsibilities, especially its seven-month delay in submitting amended proofs of claim. Were there some showing in these circumstances that RTC gained a strategic advantage or that other parties in interest were unfairly prejudiced, the case for disallowance of the amended POCs would have been much stronger. Absent any such showing, however, the court did not abuse its discretion in permitting RTC to amend its original POC. "It is well accepted that the bankruptcy court is guided by the principles of equity, and that the court will act 13 to assure that ' . . . substance will not give way to form, [and] that technical considerations will not prevent substantial justice from being done.'" Pepper v. Litton, 308 U.S. 295, 305 ______ ______ (1939) (citation omitted).  D. Impairment of Collateral  D. Impairment of Collateral ________________________ Lastly, Gens challenges the bankruptcy court ruling dismissing her "impairment of collateral" defense without first affording her an evidentiary hearing. She claimed that a prior holder of the Gens Note presumably U.S. Funding used $36,000 of the loan proceeds to pay off the preexisting second mortgage on the Barnstable Property, but failed to obtain and record the mortgage discharge. Thus, the mortgage securing the Gens Note remained third in priority, rather than climbing to second priority. Pursuant to Mass. Gen. Laws. Ann. ch. 106, 3- 606(1)(b), "[t]he holder discharges any party to the [negotiable] instrument to the extent that without such party's consent the holder . . . unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." An impairment of collateral may result if the conduct of the holder of a collateralized negotiable instrument unjustifiably diminishes the physical value of the collateral, releases the collateral to the principal obligor before the loan is repaid, or fails to perfect its security interest in the collateral. See Rose v. Homsey, 197 ___ ____ ______ N.E.2d 603, 605-06 (Mass. 1964); see also Hawaii Broad. Co. v. ___ ____ __________________ 14 Hawaii Radio, Inc., 919 P.2d 1018, 1029 (Haw. Ct. App. 1996); __________________ White v. Household Fin. Corp., 302 N.E.2d 828, 835 (Ind. Ct. App. _____ ____________________ 1973). Nevertheless, in most jurisdictions a party asserting an "impairment of collateral" defense must prove she signed the negotiable instrument (viz., promissory note) merely as an ____ accommodation party for the principal debtor, rather than as a borrower. See James A. White & Robert S. Summers, Uniform ___ _______ Commercial Code 13-16 (3d ed. 1988).10  _______________ An accommodation maker is one "who signs the [negotiable] instrument in any capacity for the purpose of lending [her] name to another party to it," Mass. Gen. Laws. Ann. ch. 106, 3-415(1). Frequently, accommodation parties sign debt instruments to enable the principal obligor to obtain a loan which would not have been granted absent the accommodation. Although an accommodation party is liable to the lender under the debt instrument, her liability is that of a surety only. Id. ___ cmt. 1. Thus, the accommodation maker reasonably expects that if called upon for payment following the principal obligor's default, she will be subrogated to the lender's rights against the principal obligor, including the right of recourse against  ____________________ 10The latent confusion in this regard stems from the broad language in U.C.C. 3-606, which refers to "any party to the ___ _____ [negotiable] instrument." See FDIC v. Blue Rock Shopping Ctr., ___ ____ _________________________ Inc., 766 F.2d 744, 749 (3d Cir. 1985) (outlining caselaw split). ____ We have found no Massachusetts case which determines whether a nonaccommodation obligor on a promissory note may also invoke the U.C.C. 3-606 defense. Since Gens and the bankruptcy court implicitly accepted the majority rule that Gens must establish accommodation status and because we affirm on an alternative ground, we need not address the unresolved Massachusetts-law question.  15 any collateral securing the underlying debt instrument. See id. ___ ___ cmt. 5; see also FDIC v. Blue Rock Shopping Ctr., Inc., 766 F.2d ___ ____ ____ _____________________________ 744, 749 (3d Cir. 1985); accord Restatement of Security 104, ______ 141 (1941). Therefore, to the extent the holder of the debt instrument unjustifiably devalues or releases the collateral, or fails to perfect its rights in the collateral against third parties, the right of recourse may be diminished, thereby entitling the accommodation maker to a commensurate discharge from liability under the debt instrument. See Blue Rock Shopping ___ __________________ Ctr., 766 F.2d at 751. ____ The bankruptcy court considered Gens' second signature conclusive evidence that she had signed the Gens Note in her "individual" capacity, that is, as a principal coborrower rather than an accommodation maker. It also concluded that the purport of Gens' second signature on the Gens Note was not rendered ambiguous, either by the anterior designation of the Trust as the sole "Borrower" or the failure to designate a "Co-borrower." Citing considerable case authority, Gens maintains that all accommodation makers necessarily sign promissory notes either in their "individual" or "representative" capacities. Consequently, she argues, these designations cannot conclusively resolve a signatory's accommodation status.11 Since the Gens Note must therefore be considered facially ambiguous, Gens argues  ____________________ 11See, e.g., FDIC v. Trans Pacific Indus., Inc., 14 F.3d 10, ___ ____ ____ __________________________ 12 (5th Cir. 1994) (rejecting FDIC's "attempts to nullify the import" of the "borrower" identification block in promissory note, which reflected corporation as sole borrower and did not designate corporate officer as coborrower).  16 that a hearing should have been conducted to consider parol evidence that the parties to the Gens Note (viz., U.S. Funding, ____ the Trust, and Gens) all understood that Gen's second signature was intended only as an accommodation endorsement. See, e.g., ___ ____ Mass. Gen. Laws. Ann. ch. 106, 3-415(3) (expressly allowing parol evidence of accommodation status except as to holders-in- due-course); United Beef Co. v. Childs, 27 N.E.2d 962, 964 (Mass. _______________ ______ 1940) (same); see also Butler v. Nationsbank, 58 F.3d 1022, 1027 ___ ____ ______ ___________ (4th Cir. 1995) (outlining multi-factored, intent-based "purpose" and "proceeds" tests for determining accommodation status); First _____ Dakota Nat'l Bank v. Maxon, 534 N.W.2d 37, 41-42 (S.D. 1995) __________________ _____ (same).12  ____________________ 12FDIC counters that 12 U.S.C. 1823(e) (codification of D'Oench Duhme doctrine) barred parol evidence of Gens' _______________ accommodation status, or that FDIC's status as a federal or state holder in due course barred Gens from invoking the U.C.C. 3-606 defense. See Mass. Gen. Laws. Ann. ch. 106, 3-415(3) ("As ___ against a holder in due course and without notice of the accommodation oral proof of the accommodation is not admissible to give the accommodation party the benefit of discharges dependent on his character as such."). Since FDIC's right to invoke either doctrine in this case is open to serious question, we express no opinion on its contentions. See, e.g., O'Melveny & ___ ____ ___________ Myers v. FDIC, 512 U.S. 79 (1994) (generally discouraging _____ ____ adoption of federal common-law rules especially protective of FDIC); Varel v. Banc One Capital Partners, Inc., 55 F.3d 1016, _____ ________________________________ 1021 (5th Cir. 1995) (D'Oench inapplicable where issue is not the _______ enforceability of a secret, unwritten side agreement, but whether to allow parol evidence concerning the intendment of an ambiguous written contract provision); Capitol Bank and Trust Co. v. 604 ___________________________ ___ Columbus Ave. Realty Trust (In re 604 Columbus Ave. Realty ____________________________ __________________________________ Trust), 968 F.2d 1332, 1350-51 (1st Cir. 1992) (holding that FDIC _____ is not entitled to federal holder-in-due-course status when acting in its capacity as receiver); Calaska Partners Ltd. v. ______________________ Corson, 672 A.2d 1099, 1104 (Me. 1996) (FDIC as receiver of bulk ______ purchaser not a holder in due course under state law); Mass. Gen. Laws. Ann. ch. 106, 3-302(3) (denying holder-in-due-course status to party who acquired note "as part of a bulk transaction"). 17 Even were we to assume arguendo that Gens was entitled ________ to an evidentiary hearing to determine whether she signed the Gens Note as an accommodation maker, she failed to set forth allegations which would establish the second essential element in her affirmative defense a cognizable "impairment" of the collateral. See RTC v. Feldman, 3 F.3d 5, 9 (1st Cir. 1993) ___ ___ _______ (appellate court may affirm on any ground supported by record), cert. denied, 510 U.S. 1163 (1994). As her section 3-606 defense _____ ______ is founded exclusively on the claim that her subrogation rights were frustrated, supra, Gens was required to do more than prove _____ that U.S. Funding or another holder failed to obtain and record a mortgage discharge.13 Section 3-606 plainly requires evidence that the holder's dereliction actually resulted in a loss to the accommodation party. See Mass. Gen. Laws. Ann. ch. 106, 3-606 ___ ("The holder discharges any party to the instrument to the extent __ ___ ______ . . . the holder . . . unjustifiably impairs [the] collateral . .  ____________________ 13Citing Providence, Fall River & Newport Steamboat Co. v. ________________________________________________ Massachusetts Bay S.S. Corp., 38 F.2d 674 (D. Mass. 1930), Gens ____________________________ contends that the holder's mere failure to record a mortgage discharge warrants her total release from liability because the Barnstable Property obviously was of sufficient value to satisfy the Gens Note in July 1988, and the holder's failure to perfect its security interest unquestionably increased her risk of loss ____ without her consent, even if no actual loss occurred. Since the ______ cited case predates the adoption of the Massachusetts Uniform Commercial Code in 1958, it is both legally and factually inapposite. See id. at 675 (noting that the court was "dealing ___ ___ not with the question how far a surety who has guaranteed the performance of a contract is released by subsequent alterations in it by the contracting parties, but with a change made by the creditor in the state of facts on which an independent contract of guaranty rests"); cf. infra note 14. ___ _____ 18 . .").14 Gens alleged no facts which would demonstrate any actual diminution of her subrogation rights. See FDIC v. Blanton, ___ ____ _______ 918 F.2d 524, 530 (5th Cir. 1990) (burden of proof is on party alleging discharge). First, she did not allege that any creditor obtained a  ____________________ 14Although we have found no Massachusetts case precisely in point, the clear majority trend among U.C.C. jurisdictions is to require the accommodation maker to prove actual loss from the impairment. See, e.g., Alcock v. Small Bus. Admin., 50 F.3d ___ ____ ______ __________________ 1456, 1462 (9th Cir. 1995) ("A clear majority of state courts place the burden on the guarantor to prove actual prejudice and ______ _________ limit the discharge to the extent of the impairment demonstrated.") (emphasis added); Myers v. First State Bank of _____ ____________________ Sherwood, 732 S.W.2d 459, 461 (Ark.) ("[T]he surety must prove ________ two elements in order to be entitled to a discharge 'that the holder of the note was responsible for the loss or impairment of the collateral, and the extent to which the impairment results in _______ __ loss.'") (emphasis added) (quoting Van Balen v. Peoples Bank & ____ _________ _______________ Trust Co., 626 S.W.2d 205, 209-10 (Ark. Ct. App. 1981)), modified _________ ________ on other grounds, 741 S.W.2d 624 (Ark. 1987); Bank South v. __ _____ _______ ___________ Jones, 364 S.E.2d 281, 285 (Ga. Ct. App. 1987) ("[A] failure to _____ perfect a lien on pledged corporate stock [does not] effect a discharge where it was shown that the stock had no value at the time the action [to collect on the debt] was commenced."); Hurt ____ v. Citizens Trust Co., 196 S.E.2d 349, 351 (Ga. Ct. App. 1973) ___________________ (noting that appellant has "not shown how the failure to record the leases and assignments resulted in any damage")); Rempa v. _____ LaPorte Prod. Credit Ass'n, 444 N.E.2d 308, 313 (Ind. Ct. App. ___________________________ 1983) (see infra); T.O. Stanley Boot Co. v. Bank of El Paso, 847 ___ _____ _____________________ _______________ S.W.2d 218, 223 (Tex. 1992) ("If the creditor breaches his duty, the surety is discharged on the note to the extent of his loss."); Century 21 Prods., Inc. v. Glacier Sales, 875 P.2d 1238, _______________________ _____________ 1242 (Wash. Ct. App. 1994) ("Should a creditor impair the collateral, the surety will be discharged to the extent he is harmed by the impairment."), rev'd on other grounds, 918 P.2d 168 _____ __ _____ _______ (Wash. 1996); see generally Carolyn Edwards, Impairment of ___ _________ ______________ Collateral Under Section 3-606 of the Uniform Commercial Code, 12 _____________________________________________________________ U. Dayton L. Rev. 509, 522 n.81 (1987) ("A number of courts have concluded that an unjustifiable impairment of collateral includes a failure to perfect a security interest if such failure results in a loss to the surety as subrogee."); cf. also Revised U.C.C. ___ ____ 3-605(f) (discharge for impairment of collateral only "to the extent the impairment causes the party asserting discharge to pay more than that party would have been obliged to pay . . . if impairment had not occurred."). 19 superior right of recourse against the Barnstable Property due to the fact that the preexisting second mortgage was never discharged of record. In addition, the auction sale of the Barnstable Property conducted pursuant to the first-mortgage foreclosure resulted in no surplus for application to any junior lien, including the second mortgage. Accordingly, the record can support no finding that any junior lien was impaired. Consequently, Gens' liability would not have been affected even if she had been able to establish that she signed the Gens Note as an accommodation maker. See, e.g., Rempa v. LaPorte Prod. ___ ____ _____ ______________ Credit Ass'n, 444 N.E.2d 308, 313 (Ind. Ct. App. 1983) ("Thus, _____________ where the party asserting the impairment establishes that the creditor did not perfect its lien but fails to establish the extent to which that failure resulted in loss, the party has failed to establish its affirmative defense of pro tanto ___ _____ release.").15 III III CONCLUSION CONCLUSION __________  ____________________ 15Moreover, Gens merely alleged that no mortgage discharge was recorded. She did not allege that the $36,000, see supra p. ___ ___ _____ 2, was never applied to the preexisting second mortgage. Therefore, assuming the underlying debt was in fact fully paid, it would seem extremely unlikely that the mortgagee or any of its assignees could have asserted a viable right to recourse against the Barnstable Property. See, e.g., Beaton v. Land Court, 326 ___ ____ ______ __________ N.E.2d 302, 307 (Mass.) (noting that "a court acting under general principles of equity jurisprudence has broad power to reform, rescind, or cancel written instruments, including mortgages," and that the discharging party could simply have brought suit to compel the mortgagee to cancel the note and "issue a discharge of mortgage in a form appropriate for recording"), appeal dismissed, 423 U.S. 806 (1975). ______ _________ 20 Accordingly, the district court judgment is affirmed and costs are awarded to the appellee. SO ORDERED. SO ORDERED. __ _______ 21