# UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE FIRST CIRCUIT

---

BAP No. EP 99-004

---

IN RE: RICHARD BEAULIEU and MARIE BEAULIEU,
Debtors.

---

RICHARD BEAULIEU and MARIE BEAULIEU,
Plaintiffs/Appellees,

vs.

THE CIT GROUP SALES/FINANCE, INC. and
BANKERS TRUST COMPANY OF CALIFORNIA, N.A.,
Defendants/Appellants.

---

Appeal from the United States Bankruptcy Court
for the District of Maine
(Hon. James A. Goodman, U.S. Bankruptcy Judge)

---

Before

Queenan, Kenner, & Hillman, U.S. Bankruptcy Judges

---

David R. Dubord, Robert C. Robbins, IV and Gosselin, Dubord & Rabasco, P.A., on brief for Appellants.

Richard J. O'Brien and Linnell, Choate & Webber, LLP, on brief for Appellees.

---

September 7, 2001

---

HILLMAN, J.

Richard and Marie Beaulieu (collectively "Debtors" hereafter) commenced this adversary proceeding against CIT Group Sales/Finance, Inc. and Bankers Trust Company of California, N.A. (collectively "Appellants" hereafter) to determine the validity, priority, and extent of the Appellants' interest in Debtors' mobile home. Specifically, purporting to act under the avoidance power given them by 11 U.S.C. § 522, the Debtors' complaint seeks to avoid as a preferential transfer the security interest of the Appellants which was perfected (after a prior lapse) within 90 days of the petition filing date. The bankruptcy judge decided the case in the Debtors' favor under another theory. Relying upon an agreed statement of facts and the dockets described below, he ruled that Appellants had waived their lien on the mobile home by their actions in the Debtors' prior case. We have jurisdiction of the appeal pursuant to 28 U.S.C. §158(a)(1). For the reasons stated, we reverse the decision below.

**Standard of Review**

There are no disputed factual issues on appeal. We review conclusions of law *de novo*, with no special deference to the bankruptcy court's determinations. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 20 (1st Cir. 1994).

**I.  Facts**

On May 8, 1989, Debtors granted a security interest in their mobile home to Appellants. The Appellants duly perfected their interest by filing a financing statement in accordance with the Uniform Commercial Code as adopted in Maine. 11 M.R.S.A. §9-302. The effective term of a financing statement in Maine is five years. 11 M.R.S.A. §9-403(2). Since Appellants did not continue the filing, it lapsed after that time. *Id*.

1

On July 29, 1994, Debtors filed a joint petition for relief under Chapter 13 ("Case I"). They scheduled a secured claim of "The C.I.T. Group" (which is agreed to be the liability sought to be enforced by Appellants) in the amount of $33,973.50, as against a mobile home with a value of $20,000.00. Within the time permitted by Fed. R. Bankr. P. 3002(c), Appellants filed a proof of claim asserting an *unsecured* nonpriority claim in the amount of $35,094.90. Pursuant to a local rule, the bankruptcy court issued an *ex parte* interim payment order which provided that Appellants' claim would be "paid as unsecured-no UCC-1".[1]

The Debtors voluntarily converted Case I to Chapter 7 on March 16, 1995, prior to the confirmation of their Chapter 13 plan. On March 22, 1995, the clerk issued an amended notice of commencement of case which contained the capitalized statement "AT THIS TIME THERE APPEAR TO BE NO ASSETS AVAILABLE FROM WHICH PAYMENT MAY BE MADE TO UNSECURED CREDITORS. DO NOT FILE A PROOF OF CLAIM UNTIL YOU RECEIVE NOTICE TO DO SO." Notwithstanding the admonition of the clerk of court, on or about March 31, 1995, Appellants filed an amended proof of claim, referring back to the original proof, in which they asserted that their claim was secured. The bankruptcy court issued the Debtors' discharge on June 20, 1995, and closed the case on July 21, 1995. Neither the trustee nor any party in interest took any action with regard to the original or the amended proof of claim, nor was there any attempt to avoid the Appellants' security interest.

On March 15, 1996, subsequent to the discharge and closing of Case I, Appellants filed a

---

[1] The *ex parte* interim order specifically provides that it "is without prejudice to any amendment which may be sought by any party in interest at or before final confirmation." As there was no final confirmation of a plan under Chapter 13, the order lacks any preclusive effect.

financing statement with the Maine Secretary of State.

On June 11, 1996, Debtors filed a new petition under Chapter 13 ("Case II"). On Schedule D, Debtors listed a secured claim of "The C.I.T. Group" in the amount of "0.00" against a mobile home with a value of $20,000.00.

## II. Bankruptcy Judge's Decision

All of the foregoing is stipulated. The parties also stipulated that perfection of the Appellants' security interest on March 15, 1996 (1) was a transfer within the meaning of 11 U.S.C. § 547(a), (2) occurred at a time when the Debtors were insolvent, (3) occurred within 90 days of the filing of Case II, and (4) enabled the Appellants to receive more than they otherwise would have received if: (a) this case were a case under chapter 7, (b) the perfection had not occurred, and (c) the Appellants received payment of their debt to the extent provided under Title 11.

The parties submitted the case to the bankruptcy judge on these stipulated facts. They argued both the preference question and the question of whether what transpired in Case I renders the claim unsecured notwithstanding the filing of a financing statement between Case I and Case II.

The bankruptcy judge characterized the foregoing events as follows:

> In direct contravention of [the notice language set forth in capital letters above], on April 3, 1995, CIT [Appellants] filed an amended proof of claim attempting to change the nature of its claim from unsecured to secured. CIT filed its amended proof of claim without seeking leave of court, and did not otherwise bring its proposed amended proof of claim to the attention of the Court. Specifically, CIT did [not] object to or otherwise challenge the April 14, 1995 Trustee's Final Report . . . which did not reflect CIT's claim as an allowed secured claim; CIT did not object to entry of the closing order, and CIT did not object to the Final Decree, which entered on July 21, 1995.[2]

Describing the amendment as a "backdoor attempt to change the status of a claim from

---

[2] *Memorandum of Decision*, pp. 2-3.

unsecured to secured without notice and hearing [which] is not well-taken," the bankruptcy judge held that the effect of the foregoing was that the "original proof of claim was a waiver of any security interest". On that basis only he held that the Appellants' claim was discharged in Case I.[3]

In essence, the bankruptcy judge held that the amendment was ineffective, and, because the original claim was for an unsecured claim, the Appellants had waived their secured claim. We find fault with each of his grounds supporting that conclusion.

First, the bankruptcy judge stated that the amended proof was filed "in direct contravention of" the clerk of court's notice that no proof of claim should be filed "until you receive notice to do so." We have been unable to locate any authority empowering the clerk of the bankruptcy court to forbid the filing of a proof of claim. The optional statement authorized by Fed. R. Bankr. P. 2002(e)[4] does not bar the filing of a proof of claim in a no asset case; it only holds that such a filing is "unnecessary."[5]

Second, the judge held that the amendment was an improper attempt "to change the nature of its claim from unsecured to secured." In so holding, the bankruptcy judge found that the amendment violated the test pronounced by the First Circuit Court of Appeals in *Gens v. Resolution Trust Corp.*, 112 F.3d 569, 575 (1st Cir. 1997), *cert. denied* 118 S.Ct. 335 (1997). His reliance on *Gens* is misplaced.

---

[3] *Memorandum of Decision*, pp. 4-5.

[4] " In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims."

[5] In defense of the wording on the notice, it does parallel the language of Official Form B9A.

4

That case established the test to be applied when a claimant seeks to amend its proof of claim after the bar date for filing has passed. In *Gens* the claimant filed the amendment almost seven months after the bar date. In that circumstance, the First Circuit held that the claimant must move to amend the claim and that the court may grant such a motion only if the claimant has demonstrated satisfaction of the factors set forth in *Gens*. Here, in a no asset case where the Rule 2002(e) notice had issued, there is no bar date. *See In re Jones*, 191 B.R. 265, 266 (Bankr. D. Mass. 1996). If assets are discovered, a bar date will be set. Fed. R. Bankr. P. 3002(c)(5). *Gens* is inapplicable. *See Clamp-All Corp. v. Foresta (In re Clamp-All Corp.)*, BAP No. 98-043, 1999 WL 459250, at *3 (B.A.P. 1st Cir. June 22, 1999).

Third, the bankruptcy judge faulted Appellants for filing the amended claim "without seeking leave of court, and did not otherwise bring its proposed amended proof of claim to the attention of the Court." However, he did not point to any requirement that an amendment to a proof of claim be made only pursuant to court order or that any law or rule requires bringing an amendment to a proof of claim to the attention of the court in any other way. We do not find any such requirement applicable to the pre-bar date period.

If a proof of claim were a "pleading," and if the filing of an amendment to a proof of claim were considered a contested matter, then such an amendment would be subject to the strictures of Fed. R. Civ. P. 15(a), made applicable to adversary proceedings by Fed. R. Bankr. P. 7015 and to contested matters by *Gens*, 112 F.3d at 575 n.8. But we are not persuaded as to the latter and the former is wrong in law. "Pleading" is defined in Fed. R. Civ. P. 7(a):

> There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the

provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

The definition does not include a proof of claim.

Finally, the bankruptcy judge noted that Appellants had not objected to the trustee's final report, "which did not reflect CIT's claim as an allowed secured claim." That statement is correct, but neither did the final report state that the claim was unsecured. The final report in the record is that of the Chapter 13 trustee, where the claim at issue is marked "hold pending." The closing order and final decree do not appear on the record.

In sum, we find that the bankruptcy judge was in error when he ruled that the amended proof of claim was invalid. As that was the sole basis for his decision, it cannot be sustained on the grounds upon which he relied. However, little would be served by a reversal and remand of the case which would in all probability result in another hearing and another appeal. The facts are stipulated or a matter of record. In the interest of judicial economy we will examine the further substantive issues raised by the parties at this time.

### III. Survival of the Security Interest During Case I

Because we conclude that the amendment was proper, we find that Appellants appropriately asserted a secured claim, albeit unperfected, against Debtors in Case I.[6] The record does not reflect any action with regard to the amended claim either in the pre- or post-conversion period. In the absence of an objection by a party in interest, the claim is deemed allowed. 11 U.S.C. § 502(a). As

---

[6] "All claims actually filed by a creditor in the superseded case shall be deemed filed in the chapter 7 case." Fed. R. Bankr. P. 1019(3).

6

we have previously held,

> [A] discharge extinguishes only in personam claims; it generally has no effect on in rem claims against property, and that to extinguish or modify a lien during the bankruptcy process, the debtor must take some affirmative step toward that end.

*Doral Mortgage Corp. v. Echevarria (In re Echevarria)*, 212 B.R. 185 (B.A.P. 1st Cir. 1997) (citations omitted), *aff'd* 141 F.3d 1149 (1st Cir. 1998).

No affirmative action was taken in Case I to affect Appellants' lien in any way. As a result, subsequent to the closing of that case, Appellants held an unperfected *in rem* claim against the Debtors' mobile home. When Appellants exercised the right granted to them by Maine law and refiled on March 15, 1996, it resulted in perfection of their security interest, effective as of the time of refiling. 11 M.R.S.A. §§9-402(2)(c), 9-303(1).

## IV. The Antecedent Debt Issue

Debtors assert that the transfer by perfection was a transfer made on account of an antecedent debt. Debtors argue, therefore, that the perfection of the security interest constituted a preferential transfer under 11 U.S.C. § 547(b).[7] Appellants respond that, since the *in personam* liability of the

---

[7] "Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
      (1)      to or for the benefit of a creditor;
      (2)      for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3)      made while the debtor was insolvent;
      (4)      made—
            (A)      on or within 90 days before the date of the filing of the petition; or
            (B)      between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
      (5)      that enables such creditor to receive more than such creditor would receive if—
            (A)      the case were a case under chapter 7 of this title;
            (B)      the transfer had not been made; and
            (C)      such creditor received payment of such debt to the extent provided by the provisions of this title."

Debtors was extinguished in Case I, there was no antecedent debt owing which would trigger the application of the preference section. Because of our conclusion as to Appellants' final argument, we need not reach this point.

## V. Debtors' Ability to Avoid Under 11 U.S.C. § 522(h).

Appellants finally argue that, even if the re-perfection were a preference, the Debtors cannot avoid it because of § 522(h). Assuming such a finding for purposes of argument, we hold that Appellants are correct.

A debtor may avoid a lien as a preference under §547 only by invoking 11 U.S.C. § 522(h), which provides that

> The debtor may avoid a transfer of property of the debtor or recover a setoff *to the extent that the debtor could have exempted such property under subsection (g)(1)* of this section if the trustee had avoided such transfer, if—
>     (1)     such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
>     (2)     the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h) (emphasis added).

It appears that the trustee made no effort to avoid the transfer.

The emphasized limitation in § 522(h) requires us to find that the Debtors would be entitled to claim an exemption in the mobile home under § 522(g)(1) before they can utilize their avoidance powers. The latter section provides that:

> Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under sections 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)   (A)   such transfer was not a voluntary transfer of such property by the debtor....

11 U.S.C. § 522(g)(1).

The Debtors' grant of a security interest in their mobile home was a voluntary transfer. *In re Millerburg*, 61 B.R. 125, 128 (Bankr. E.D. N.C. 1986); *In re DiPalma*, 24 B.R. 385, 387 (Bankr. D. Mass. 1982). As a result, §522(g)(1)(A) prohibits the Debtor's exercise of the trustee's power to avoid preferences.

Since this conclusion goes to the heart of Debtor's cause of action, it requires that Appellants prevail.

## Conclusion

For the reasons stated, we REVERSE the decision of the bankruptcy judge and REMAND the case to the bankruptcy court for entry of judgment for the Appellants.

9